[No. 31315. Department One. April 24, 1950.]

THE STATE OF WASHINGTON, *on the Relation of Floyd F. Kibbe, Plaintiff*, v. BARTLETT RUMMEL, *as Judge of the Superior Court for Pierce County, Respondent.*[1]

*James P. Healy,* for relator.

*Gagliardi, Ursich & Gagliardi,* for respondent.

DONWORTH, J.—Relator filed his petition in this court praying that a writ of review be issued directing the superior court of Washington for Pierce county, Honorable Bartlett Rummel, Judge, to certify to this court for review, the records and proceedings in a certain action pending in the superior court entitled "Alice Louise Kibbe, Plaintiff, vs. Floyd F. Kibbe, Defendant," No. 82004.

An alternative writ of review having been issued directing Judge Rummel to certify and return to this court a transcript of the records and proceedings in the case, the judge complied therewith by causing a transcript of the record and a statement of facts certified by him to be transmitted to this court.

The record before us shows that, on October 13, 1939, Alice Louise Kibbe obtained an interlocutory decree of di-

vorce from the relator. He did not appear in the case, nor did he answer the summons and complaint, which were personally served upon him in Pierce county.

The interlocutory decree provided, among other things, that the relator pay to his former wife the sum of thirty-five dollars per month for the support and maintenance of their two minor children, Polly Lee and Wendell Dean, until further order of the court. No appeal was taken and on April 22, 1940, a final decree of divorce was entered confirming the interlocutory decree in all respects.

October 3, 1949 (practically ten years later), Alice Kibbe filed her affidavit in the superior court for Pierce county alleging that the relator had not paid the thirty-five dollars per month for the support of the children since September, 1947, and that he was in arrears in such payments in the sum of eight hundred forty dollars. It was further alleged that one of the minor children, Polly Lee Kibbe, had become of age and was married, but that the son was still a minor.

An order was issued requiring the relator to show cause why he should not be adjudged in contempt for failure to comply with the interlocutory decree of October 13, 1939, and to show cause why he should not comply with the provisions of that decree.

In response to this show cause order, the relator appeared in person before the superior court October 13, 1949. He was not represented by counsel at that hearing. After testifying that he was employed as a crane operator at one dollar and forty cents per hour and had been employed steadily, except for seventeen weeks during 1949, his explanation for failing to make the payments required by the decree was as follows:

"Q. What explanation, if you have any, can you give the Court for not paying your wife this required support money? A. Well, she is asking $840.00 there, which is for the two children, and the girl was married in 1946, so I cut the payment down to seventeen fifty and I paid that up until two years ago, after the boy turned eighteen, and I figured that he could help me and make a way for himself.

Q. Did you arbitrarily cut that down to seventeen — A. I did myself. Q. But you haven't paid any support for this boy since 1946, was it? A. '47. Q. September of 1947. A. 1947. Q. And you offer to the Judge as an explanation of that, what? What reason do you give for not paying that? A. Well, I figured that when he become eighteen maybe he could help me out, and — I had a pretty tough time. I was in the Army three years and she received $50.00 per month while I was in the Army. I paid twenty-two out of my allotment toward it and the government paid their twenty-eight. Q. That was all prior to 1946. A. Yes. Yes, that was all prior. Q. You realize that your son is in school now? A. Yes, he is. Q. And he is not working. A. No, he's not working. Q. Do you have any money at the present time? A. I haven't any at the present time. Q. Do you have a bank account of some kind? A. No, I have no bank account."

Upon the conclusion of relator's testimony, the trial court announced its decision as follows:

"THE COURT: Well I'm sorry Mr. Kibbe, but I'm afraid that I'm going to have to commit you to the County Jail for about 30 days, for failure to pay support money. You had no right to cut it down without an order of the Court, and I can't see any reason why you haven't paid it, maybe the last four months, yes, but not since 1946 [1947]. There is no excuse.

"It will be the judgment of this Court you are in contempt of Court and you will be committed to the County Jail for a period of 30 days.

"Will you call the sheriff and let him take him down to the County Jail. You can step down here and wait. Just be seated over here."

Subsequently the court, at the request of Alice Kibbe's counsel, modified this decision and granted relator seven days within which to pay to his former wife the sum of eight hundred forty dollars or be committed to jail for thirty days. An order was entered accordingly October 13, 1949.

During this seven-day period relator employed an attorney, who, on October 20, 1949, filed a motion to vacate and set aside this order (and to stay the execution thereof) upon the ground that it was irregularly obtained and was

taken by the excusable neglect and mistake of the relator and that the court had no jurisdiction to enter the order. The court thereupon issued a show cause order directed to Alice Kibbe to show cause why the order of October 13, 1949, should not be set aside. This motion was supported by certain affidavits.

October 21, 1949, relator paid four hundred twenty dollars into the registry of the court and an order was then entered staying further proceedings in the case.

After a hearing at which the court considered the affidavits submitted on behalf of the relator and his former wife, the court filed its memorandum decision stating its reasons for denying the motion. December 8, 1949, a formal order was entered denying relator's motion and directing him to pay the sum of eight hundred forty dollars to Alice Kibbe or be committed to the county jail for thirty days. It is to review this order that the alternate writ of certiorari was issued in this court.

After the entry of this order, certain friends of relator paid the further sum of four hundred twenty dollars into the registry of the court, making the total amount of eight hundred forty dollars, which is subject to the order of this court.

Relator contends that the superior court never acquired jurisdiction to punish him for contempt because the affidavit of his former wife charging that he was in contempt failed to show on its face (1) service of either the interlocutory or final decree of divorce upon the relator; (2) that he was present in court when either decree was entered; (3) that he had actual knowledge of the provisions of either decree; or (4) that any demand had been duly made upon the relator to comply with these decrees.

In cases where contempt of court has been committed outside the presence of the court, as in this case, Rem. Rev. Stat., § 1052 [P.P.C. § 20-7], provides that:

". . . before any proceedings can be taken therein, the facts constituting the contempt must be shown by an affidavit presented to the court or judicial officer, and thereupon such court or officer may either make an order upon

the person charged to show cause why he should not be arrested to answer, or issue a warrant of arrest to bring such person to answer in the first instance."

Relator's argument is that, since the affidavit in this case did not sufficiently show upon its face the facts constituting the alleged contempt (being deficient in the particulars mentioned above), these jurisdictional facts cannot be supplied by proof. Cited in support of his position are *State ex rel. Olson v. Allen,* 14 Wash 684, 45 Pac. 644; *State ex rel. Victor Boom Co. v. Peterson,* 29 Wash. 571, 70 Pac. 71; *State ex rel. Ewing v. Morris,* 120 Wash. 146, 207 Pac. 18.

█ Under our decision in *Poland v. Poland,* 63 Wash. 597, 116 Pac. 2, this was not an ordinary contempt proceeding, but was one in which a court of equity was acting in aid of its original jurisdiction by enforcing compliance with its original decree. The facts in the cited case were similar to those in the case at bar and, in discussing the nature of such a proceeding, we there said:

"This is not a contempt proceeding. Under our statute a proceeding in contempt is in the nature of a criminal proceeding, in which the only matter to be inquired into is the contemptuous act charged. *This is a proceeding in a court of equity in aid of its original jurisdiction, in which the court is seeking the enforcement of its original decree*; and although the court required the respondent to appear in response to its order or be adjudged in contempt, the nature of the proceeding was not changed from one of equitable to one of criminal cognizance. It has long been the established practice in this state, in seeking the enforcement of alimony decrees, to entitle the proceeding in the original action, . . ." (Italics ours.)

█ The relator's objection to the jurisdiction of the court was not asserted when he appeared and testified on October 13, 1949, in response to the order to show cause. We need not decide whether this action on his part constituted a waiver of his right to object to the jurisdiction of the court (1 Freeman on Judgments (5th ed.) 700, § 344) because we are satisfied from an examination of his former wife's affidavit, upon which the show cause order was based, that the statements therein contained were sufficient.

This affidavit stated, in substance, that the interlocutory decree had been entered in 1939 and had been confirmed by a final decree; that by these decrees the custody of the two minor children had been awarded to the former wife; and that the relator had been ordered to pay to the former wife "for their care, support, maintenance and education the sum of $35 per month until the further order of the court." It was further stated that the daughter of the parties had become of age and was married, but that their son was still a minor and in school. It was further stated that the relator had not paid "said $35.00 per month nor any part thereof for the year beginning September, 1947" and that he was in arrears in these payments in the total amount of $840, and that he had been able to make these payments, but had utterly refused to make them.

It is not necessary that the affidavit state the facts constituting the contumacious conduct in so many words if such facts can reasonably be inferred from it. *State ex rel. Roseburg v. Mohar,* 169 Wash. 368, 13 P. (2d) 454, although not involving a divorce decree, was a case where the trial court was seeking to enforce obedience to its original decree which had enjoined the appellant from piping water from a certain spring. The action was brought to punish him for contempt for reconnecting his pipe line every time that the successful party to the original litigation had disconnected it. The appellant in that case, having been found guilty of contempt, appealed to this court contending, among other things, that his demurrer to the affidavit supporting the show cause order should have been sustained. In disposing of this contention adversely to him we said:

"The appellant first contends that his demurrer to the affidavit supporting the order to show cause should have been sustained, because it failed to allege that he had been served with a copy of the injunctive order or that he had knowledge thereof. It is not necessary that a party charged with contempt for refusal to obey an order of court be personally served with a copy of the order, if it appears by the affidavit that he had knowledge of its contents. The gist of the offense is the commission of the violative act with knowledge that such act has been enjoined by the court, whether

formal notice has been served or not. *State ex rel. Lindsley v. Grady,* 114 Wash. 692, 195 Pac. 1049, 15 A. L. R. 383.

"While the affidavit did not specifically state, in *haec verba,* that the appellant had knowledge of the contents of the order, it used language that is capable of no other meaning. It charged him with doing the act in total disregard of the court's judgment and in defiance of its order. There was not merely a passive noncompliance with it, but there was a positive defiance of it. An act in defiance of an order necessarily imports knowledge of it. As defined in Funk and Wagnall's New Standard Dictionary, 'defiance' is 'a contemptuous opposition or disregard openly expressed in words or actions.' We conclude that the affidavit was sufficient."

We are of the opinion that it must be inferred from this affidavit that the relator had made the thirty-five dollar monthly payments for six or seven years subsequent to the entry of the interlocutory decree and therefore had knowledge of its rendition and of its provisions. He, therefore, is chargeable with knowledge that he was obligated to make these payments to his former wife for the benefit of his children until further order of the court. Under these circumstances, no specific demand for payment need be alleged in the affidavit. 17 Am. Jur. 508, § 668.

Relator further contends that, since the interlocutory decree did not segregate the thirty-five-dollar monthly payments between his daughter and his son, it was no longer valid after his daughter became of age. Therefore, the violation of it could not constitute contempt.

In support of this contention, relator relies on our decision in *Evans v. Evans,* 116 Wash. 460, 199 Pac. 764. In that case, an Illinois divorce decree had awarded sixty dollars per month as alimony to the wife and for the support of two minor children. It was there held that, one or both children having become of age, it was incumbent on the wife to procure a segregation of this award in the Illinois court before she (as the principal party in interest) could recover any sum from her former husband in this state.

In the case at bar, the former wife was not awarded any alimony. She is seeking to enforce the decree solely for

the benefit of the minor son who is a ward of the court. *Herzog v. Herzog,* 23 Wn. (2d) 382, 161 P. (2d) 142.

Notwithstanding the fact that his daughter had become of legal age, relator was bound to continue paying thirty-five dollars per month to his former wife for the support of his son until he attained the age of majority or until the court modified the award made by the interlocutory decree. He had the right to petition the court for a reduction in the monthly payments at any time. If, when his daughter became of age, he felt that the payment for his son's support should have been reduced or discontinued, the legal means were available to him to seek such relief from the court.

Instead of following the proper procedure, relator, in flagrant disregard of the divorce decree, arbitrarily decided that his son, having become eighteen years of age, should help him out by foregoing all future support from him. For two years prior to being cited for contempt he, without any excuse, deliberately refused to pay anything toward his son's support. This conduct on his part constituted contempt of court.

The action of the trial court in finding him to be in contempt and in denying his petition to vacate its order of October 13, 1949, is hereby approved.

The record shows that relator has deposited eight hundred forty dollars in the registry of the superior court which is available to satisfy any judgment entered against him in this action. We, therefore, modify the trial court's order of December 8, 1949, by providing that relator may be purged of contempt if, within ten days after the going down of the remittitur, he shall pay into the registry of the superior court to be disbursed to his former wife an additional sum sufficient to satisfy all monthly payments which have become due since September, 1949.

As so modified, the order of December 8, 1949, is hereby affirmed. Respondent will recover costs in this court.

SIMPSON, C. J., BEALS, SCHWELLENBACH, and GRADY, JJ., concur.