[No. 32730.  Department One.  February 8, 1954.]

HULENE HABICH, *Appellant,* v. WESLEY D. HABICH, *Respondent.*[1]

[1]Reported in 266 P. (2d) 346.

*McMullen, Snider & McMullen,* for appellant.

*Simpson & Simpson,* for respondent.

HAMLEY, J.—This is a proceeding to modify a divorce decree by transferring the custody of an eleven-year-old girl and her nine-year-old brother from their mother to their father. The trial court granted the relief requested, and the mother appeals.

The interlocutory decree of divorce was entered on August 9, 1948. In that decree, the custody of the children, then six and four years of age, was awarded to appellant. From August, 1948, to January, 1949, appellant and the children lived at the home of her mother, in Portland, Oregon. She and respondent then entered into a written agreement under which the children were to be placed in the home of his mother, in Vancouver, Washington, for a period of one year. During this period, appellant, who is an experienced beauty shop operator, purchased a home at Myrtle Point, Oregon, and used a front room as a beauty shop.

In January, 1950, when the agreed year at the home of respondent's mother had expired, respondent suggested that the children remain there until the close of that school year. Appellant agreed to this. In June, 1950, she took the children to Myrtle Point, where they stayed and went to school until June, 1951. During this year, respondent was financially able to pay only one hundred fifty dollars of the $1,560 support money (at thirty dollars a week) to which appellant was entitled for the care of the children. He had also been unable to comply with the requirement of the interlocutory decree that he keep up the payments on the mortgage loan which was an encumbrance on their former Vancouver home. Because of this, appellant had sold that home and invested the proceeds in the Myrtle Point property.

On May 18, 1951, respondent remarried. At the end of the 1950-1951 school year, the children were brought to the home of respondent's parents in Vancouver to spend the summer vacation. During that summer, appellant was hospitalized for an ulcerous stomach condition which first ap-

peared in the fall of 1950. In August, 1951, she took the children back to Myrtle Point. Early in September, appellant's condition required her to discontinue work. She therefore arranged to have respondent take the children into his home for the 1951-1952 school year. The children have been with respondent ever since.

Because of appellant's illness and inability to work, friends of hers asked her to come to Bremerton, Washington, and live with them. She did so, and while there met and married one Virgil Jones shortly before Christmas, 1951. She divorced him two and a half months later, and then returned to Myrtle Point. Appellant had no money and was not sure about her health, and therefore agreed that the children should continue to reside with respondent. It was further understood that she would have them with her during the 1952 summer vacation. However, because respondent arranged to have them attend summer camps during most of July, appellant actually had them only for the Fourth of July holiday and the month of August.

In the meantime, appellant had met John M. Vannice, of Myrtle Point, and the two planned to be married that fall. They wanted to keep the children with them at Myrtle Point. However, respondent had made arrangements for the children's schooling in Vancouver, and so, by agreement, they were returned to him at the end of August.

Appellant married Vannice on September 1, 1952. They occupy appellant's Myrtle Point home, and he operates a nearby grocery store. She operates the beauty shop part time and works at the grocery store two or three mornings a week. On December 23, 1952, they took a trip to Hawaii, returning to Myrtle Point in January, 1953. In the spring of 1953, appellant talked to respondent about taking the children back to Myrtle Point, but apparently no agreement was reached. Respondent instituted this proceeding on April 15, 1953.

Both parties and the respective stepparents are suitable and proper persons to have the custody of the children. There are adequate school, church, and recreational facilities available at either home. Both stepparents are fond of

the children, have taken an interest in them, and would like to have them in their respective homes. The children have been active in scouting organizations at Vancouver, but similar organizations are available in Myrtle Point. The children have become well established in respondent's home, where, except for visits with appellant, they have lived since September, 1951. They seem to be happy where they are.

At the suggestion of counsel for both parties, the trial judge talked to the children in private.

The first six assignments of error challenge the trial court's action in refusing to make six specified findings of fact proposed by appellant.

The substance of appellant's proposed additional findings, to the extent that they bear upon the material issues and are supported by the preponderance of the evidence, have been included in the above statement of the case. Assuming that these findings should have been included (a question which we do not decide), their omission would not be prejudicial error if the facts, as set out above, support the judgment. That is the question presented by the remaining assignments of error.

■ There are two material issues in any case involving a proposal to modify a divorce decree for the purpose of changing the custody of the children. The first of these is whether the one who would obtain custody in the event the decree is modified is a fit and proper person to have such custody. The second material issue is whether conditions have arisen since entry of the last custody order which require that custody of the children be given to such person. *Pearce v. Pearce*, 37 Wn. (2d) 918, 924, 226 P. (2d) 895.

The trial court made no express ultimate findings on either of these issues. However, it may be inferred from the findings which were made,when read in the light of the oral opinion, that the trial court decided each of these questions in the affirmative. There is no contention that the court erred in finding that respondent was a fit and proper person to have the custody of the children. This leaves as the only question before us, whether conditions had so changed,

since entry of the interlocutory decree, as to require that the children be taken from the custody of their mother and given to that of their father.

While the mother had initially been awarded custody of the children, they had been happily situated in the home of their father for nearly two years prior to the trial. They had been placed there after three years of shunting around between the home of appellant's mother in Portland, the home of respondent's parents in Vancouver, and appellant's home in Myrtle Point. This was the changed condition on which the trial court relied, in deciding that the welfare of the children demanded that custody be transferred to respondent.

It is argued that appellant is not to be blamed for these changes in actual custody and for the fact that the children were with the father for the two years immediately preceding the trial. It is asserted that these conditions were brought about by respondent's failure to make support money payments, by appellant's past ill health, and by respondent's unwillingness to surrender the children during school terms.

There is much to be said for appellant's contention, though the reasons which she gives do not wholly explain why she permitted the children to go back to respondent at the end of August, 1952. It may be that, as between her and respondent, the equities are in her favor. Were the sole, or even the primary, consideration the attainment of even-handed justice between the mother and father, she perhaps would be entitled to retain their custody. It is conceded by both parties, however, that the primary consideration is the welfare of the children. As testified to by many of our decisions, this may necessitate a different custody arrangement than would be justified by comparing the respective merits of the parties in their dealings with each other.

Appellant has called our attention to the statement we have frequently made, that children of tender years will not be taken from their mothers unless it is clearly shown that the mother is an unfit and improper person. *Allen v. Allen*, 28 Wn. (2d) 219, 182 P. (2d) 23. There was no such

showing in this case, and the trial court, in fact, expressly stated in its oral opinion that appellant and her new husband were "very suitable as guardians for these growing children."

■ It may be questioned whether children of the ages of nine and eleven years should be regarded as "children of tender years." See *Russell v. Russell*, 20 Cal. App. 457, 129 Pac. 467. In any event, and however we have stated the matter in past decisions, it is clear that there are other circumstances in addition to personal unfitness which may, for the purpose of serving the welfare of the children, warrant taking young children from their mothers. One such circumstance, for example, would be the inability of a mother to provide suitable living quarters for her children. Another would be the mother's necessary absence from her home while gainfully employed. Still another would be where the children had become happily established in the home of their father for a considerable period of time. See *Hathaway v. Hathaway*, 23 Wn. (2d) 237, 160 P. (2d) 632.

■ In the exercise of his judicial discretion, the trial judge concluded that the circumstance just mentioned outweighed the desirability of having the children live with their natural mother. His exercise of discretion is not to be disturbed unless it has been abused. The record before us affords no basis for such a finding by this court.

As indicated above, we have dealt with this appeal on the merits. It is appropriate to say, however, that if we were so disposed, there is adequate reason for holding that the act of the trial judge in conferring with the children in private precludes us from reviewing his exercise of discretion. As we said in *Nelson v. Nelson*, 43 Wn. (2d) 278, 279, 260 P. (2d) 886:

"The rule is that when children have reached an age of discretion, their wishes on the issue of custody may be considered but are not controlling. 27 C. J. S. 1172, Divorce, § 309 (b). And as to what is an age of discretion in this regard (note the qualifying words), the authorities hold that the test is whether the child is sufficiently mature to have intelligent views and wishes on the subject. *Hurner v. Hurner*, 179 Ore. 349, 170 P. (2d) 720 (1946). We af-

firmed a change in custody of two girls eighteen and sixteen years of age 'chiefly because of the wishes of the children themselves.' *Frates v. Frates*, 135 Wash. 567, 238 Pac. 573 (1925).

"However, an interview with the children by the trial judge, 'off the record' and with the consent of the appealing party, makes impossible any effective review of the custody issue, as we have no way of knowing what the children told the trial judge or how much he was influenced thereby. We are not in a position to say that the trial judge abused his discretion in awarding the custody of these children to the mother."

See, also, *Loomis v. Loomis*, 140 Wash. 319, 248 Pac. 809. Compare *Lorang v. Lorang*, 42 Wn. (2d) 539, 256 P. (2d) 481, where the trial judge indicated that the report of a probation officer, which was not made a part of the record, served only to confirm the conclusion which he had already reached. In view of that statement, we considered the case on the merits, but affirmed.

The children involved in the instant case were nine and eleven years old at the time of the trial. While they were younger than the children involved in the *Nelson* and *Frates* cases, they were old enough to express intelligent desires, and the trial court was entitled to take those desires into consideration. Counsel for both parties must have thought so or they would not have suggested that the trial judge talk to the children. The trial judge must have thought so or he would not have done it. The record indicates that the suggestion that the judge talk to the children was first made immediately after a witness was stopped from giving hearsay testimony as to the girl's wishes.

Aside from the expression of their desires, the children may have made factual statements to the trial court concerning living conditions at Myrtle Point or other matters pertinent to the issues of the case. Such statements, if any, are not a part of the record, and yet they may have influenced the court in reaching its decision.

While we have not disposed of this case on the basis of the decision in *Nelson v. Nelson, supra,* we believe that the

circumstance that the trial judge conferred with the children requires at least that added weight be given to the findings which he made and to the conclusions which he reached.

The judgment is affirmed.

GRADY, C. J., MALLERY, HILL, and OLSON, JJ., concur.

