[No. 38351.    Department Two.    October 20, 1966.]

EARL L. FOUTCH, *Respondent*, v. KATHERYN FOUTCH, *Appellant.**

*Barbara Ohnick,* for appellant.

*Allen Lane Carr,* for respondent.

DONWORTH, J.—This is an appeal from a trial court order and judgment modifying an original decree of divorce by changing custody of the two children from their mother

*Reported in 419 P.2d 318.

to their father, and terminating the father's obligation to make monthly payments for their support.

Plaintiff, Earl Foutch, obtained a decree of divorce from Katheryn Foutch on October 26, 1956. The decree granted custody of the two minor children of the parties, Melody and Raymond, then aged 10 and 8 years, respectively, to the mother. The father was ordered to pay $75 per month as support for each child until each attained the age of 21 years, unless he should become self-supporting or married prior thereto. Plaintiff instituted this proceeding for modification of the divorce decree in December, 1964. The matter came on for hearing in February, 1965.

Earl Foutch remarried in November, 1956. His present wife, Helen, brought to the marriage her two teen-aged daughters whose natural father has never contributed to their support. Earl and Helen Foutch thereafter had a son of their own who, at the time of the trial, was approximately 7 years old. In June, 1957, Katheryn Foutch also remarried. There have been no children born of that union.

In 1964 (which was nearly 8 years after the divorce), the oldest child, Melody, graduated from high school with honors. She subsequently enrolled in the University of Washington, where she hopes to earn a degree in medicine. In August, 1964, with her mother's consent, she moved to the home of a girl friend, who was also attending the university. A contributing factor to Melody's change of residence was that she did not get along with her stepfather, who was a periodic drinker. Her mother testified at the hearing that she intended to obtain a divorce from her second husband as soon as she could afford to do so. Counsel for appellant stated in the oral argument before this court that this is now an accomplished fact.

At the time of the hearing, Melody was employed part time at Rhodes of Seattle, but was not self-supporting. While she was not then required to pay a regular sum for room and board at her friend's house, and had managed to save $200, she was dependent on the support payments from her father for her school expenses. She testified that after she had moved, the checks received from her father

in September and October, 1964, were endorsed by her mother and given directly to her. The father has made no payment for Melody's support since that time.

Raymond, the son of the parties, had dropped out of Queen Anne High School in June, 1964, at the end of his junior year. Chiefly because of his truancy and failing grades, the school authorities would not permit him to return the following September. They admitted that they had had no success in their attempts to find the reason for his lack of interest in his studies.

While in school, Raymond had worked as a bus boy at the Grosvenor House Restaurant, and had had a morning paper route for 2 years. After leaving Queen Anne High School, he had worked briefly at Marine Charters, Norm's Enco Service, and Richard Lee Construction. At the time of the hearing, he was unemployed and spent most of his time tinkering with automobiles and playing basketball.

As a result of his mother's intercession with school authorities, Raymond was allowed to begin night school at Edison Technical School in September, 1964. He had dropped out of Edison during his first quarter there, but returned at the start of the next semester in January. Then a short time before the trial in this proceeding, but after the petition of modification was filed, Raymond again dropped out of Edison, this time without his mother's knowledge. The mother testified that she sought the father's help with Raymond regarding his problems at Queen Anne High School, but that the father refused to give any help.

Both children, who at the time of the hearing were 19 and 17 years of age, respectively, testified that they would not live with their father and stepmother, Raymond stating that he would run away first. The father contends that their reluctance to reside with him is due to the fact that the mother has turned the children against him and their stepmother. The children testified that their feeling in this respect is based upon the complete lack of interest or concern shown them by their father during the 8 years preceding the institution of this modification proceeding, and to their own dislike of the stepmother.

Both children stated that during this period the father had made no effort to see them though he lived in the same city. The father attributes this failure to the fact that he found that his visits at their home were "very disagreeable and embarrassing" because of the animosity shown toward his second wife by the children resulting from the statements made to them by their mother. The father had failed through the years to remember the children on their birthdays or on Christmas, even with a greeting card. Melody testified that her father had failed to come to her graduation even though she sent him an invitation addressed to him at his place of business. The father denied that he received it, but Melody says she put a return address on the envelope, and it was never returned to her.

Raymond testified that he was told by the stepmother on the telephone that they did not want him in their home. He also testified that when he was injured in a trampoline accident the father never came to see him at the hospital nor did he telephone him. The only communication by the father at that time was with the mother regarding certain policies of health and accident insurance.

In October, 1964, the father hired a private detective and, through him, learned of Melody's change of residence and Raymond's continued school problems. Thereupon the father, upon the advice of his attorney, ceased to make support payments. At the time of the trial the father was in arrears for at least the months of November and December, 1964, and January and February, 1965.

The father has been employed by the same company for the past 24 years. His yearly income is approximately $8,000, while the mother's is approximately $4,000. The mother is employed as a real estate agent on a commission basis. Her employer testified to her good character and reputation and to her devotion to her children.

At the close of testimony the trial court rendered a thorough oral decision in which it analyzed in detail the serious problems confronting it regarding the welfare of the children. Later, in denying the mother's post-trial motions for reconsideration or alternatively for a new

trial, the court again stated at length its reasons for changing the custody of the children. The trial court found that the hostility of the children toward the father and stepmother was unreasonable; that the mother had lost control of Raymond; and that it would be in the best interest of the minor children and for their best welfare that the custody be changed from the defendant mother to the plaintiff father. The court, therefore, ordered that the divorce decree be modified to change the care, custody and control of the minor children of the parties from the mother to the father, and further ordered that the $75 per month for the support of each of the two children payable under the decree of divorce to the mother be terminated. The order was entered March 23, 1965. It is from this order that the mother appeals.

▉ We begin with the proposition, of which the trial court was keenly aware, that the paramount concern of the court in cases of this nature is the welfare of the children involved. *Munroe v. Munroe,* 49 Wn.2d 453, 302 P.2d 961 (1956); *Stratton v. Stratton,* 53 Wn.2d 558, 335 P.2d 39 (1959), and cases cited therein; *Jones v. Jones,* 68 Wn.2d 413, 413 P.2d 338 (1966).

> In child custody cases, the trial court, in furtherance of the best interests and welfare of the child, is vested with a wide latitude of discretion and its custody disposition will not be disturbed in the absence of a manifest abuse of discretion. *Cumbie v. Cumbie,* 61 Wn.2d 669, 674, 379 P.2d 918 (1963).

The trial court found, in findings Nos. 5 and 6, that a change of custody in this case from the defendant mother to the plaintiff father was necessary for the welfare of these children. On this crucial finding of fact, defendant bases her principal assignments of error.

The trial court pointed out in its first oral decision that Melody will reach the age of 21 in February, 1967, at which time the father's obligation to support her under the original decree will terminate. The court expressed its feeling that if the father were given custody, a better relationship might develop between him and his daughter and he might then be

willing to voluntarily assist her to obtain a college education both before and possibly after the time she will attain the age of 21. In effect, the trial court concluded that it would be in Melody's best interests to exchange assured assistance from her father of short duration for the possibility of financial help for a longer period, and on this conclusion bases its decision to award her custody to her father.

The trial court chose to believe the father's statement that, if Melody's custody were given to him, he would be willing to contribute to his daughter's education. In view of the statements of counsel at the argument of this case concerning events which transpired subsequent to the trial and prior to the hearing in this court, we do not find it necessary to decide whether the trial court abused its discretion in making such a determination.

However, we feel it was clearly not the intention of the trial court that the father be freed from his financial responsibilities regarding Melody. The trial judge, in his second oral decision, stated:

> I don't know that I had any authority to tell Mr. Foutch that by granting him this custody he had to put $75 in a savings account to Melody's credit and that he was going to have to pay her, I think I said tuition—maybe I didn't, but anyway, I said $100 a month. I don't know that I had the authority to tell him to do that when he had the custody, the legal custody, but I did observe that when I said it both he and Mrs. Foutch sitting over there at that side of the table affirmatively nodded their head that they were willing to do that. Was I right in that? Mr. Foutch: Yes sir.

Thereafter, the trial judge stated:

> The law imposes upon him an obligation to support his minor children. I do not think I will put in the decree the provision that he will pay Melody $100 a month. I am not going to require that. *I think he will do it without my requirement* and maybe that would convince Melody that he was not quite the bad character that she has been led to believe and think he is. I want him to get the benefit of anything she has or gets from him, not by my order. (Italics ours.)

Counsel, in their oral argument before this court, stated

that the father has, since the entry of the trial court's order, paid nothing to or on behalf of the children. If this is found to be a fact, it is clear that the father has not lived up to what we find to have been the intent of the trial court. It is further stated by counsel before this court that, since the entry of the trial court's order, Raymond has remained at the home of his mother, and has, by his own efforts, obtained permanent employment at the plant where his father is employed. Melody has since changed her residence to the home of a university professor and his family, and the mother has obtained a divorce from her second husband.

Because of these admitted material changes in the circumstances of the parties and their children, we do not consider it advisable or proper to affirm or reverse now the award of custody of these children as made by the trial court. These changes in circumstances, along with others that may appear at a rehearing of the matter, may justify a different disposition of the custody problem at this later time, particularly in view of the ages of these children and their continued refusal to live with the father and stepmother, whether reasonable or not. *Frates v. Frates*, 135 Wash. 567, 238 Pac. 573 (1925); *Nelson v. Nelson*, 43 Wn.2d 278, 260 P.2d 886 (1953); *Habich v. Habich*, 44 Wn.2d 195, 266 P.2d 346 (1954).

We, therefore, remand this cause to the trial court with directions to make the necessary determinations of fact in the light of such evidence regarding the present condition of the children as may be presented by the parties at a further hearing, and to make such disposition as to their custody as in its discretion the evidence may warrant. This is in accord with our recent decision in *Jones v. Jones*, 68 Wn.2d 413, 413 P.2d 338 (1966).

This case is unique in this respect: the time within which the trial court must act is now very short. The hope of the trial court that the father would voluntarily assist Melody financially with her education has not been realized. The trial court cannot retroactively modify its previous order to require payment of support for Melody by the

father from the time of the entry of that order to the present. *Wilburn v. Wilburn,* 59 Wn.2d 799, 370 P.2d 968 (1962). Melody will be 21 years old in February, 1967, at which time the father's obligation to contribute to her support will cease. Therefore, the trial court's further order requiring the father to pay support from the time of the further hearing on his petition until she reaches her majority would be of little financial benefit to her.

In order for Melody to receive that to which she is entitled from her father, and in order for substantial justice to be done with regard to Raymond, we hereby vacate the order of the trial court in so far as it terminates the father's obligation to pay support for the children. The provisions of the original divorce decree relative thereto continue in full force and effect as if the order of the trial court had never been entered. The father is liable for the support payments ordered by that decree until, by its terms, the obligation is at an end, *i.e.* until such time as either child reaches the age of 21, marries, or becomes self-supporting. The trial court is directed to enter an order requiring payment of the amounts accrued thereunder from the date of the last payment made by the father until such date as a rehearing of this matter is had, and to make such order for future child support payments as it deems proper. See *State ex rel. Kibbe v. Rummel,* 36 Wn.2d 244, 217 P.2d 603 (1950).

One other issue is raised by appellant. The father, upon learning from his investigation that the boy was neither working nor attending school, and that Melody had moved to the home of her girl friend, on the advice of his attorney ceased payment of monthly support. The trial court found that he was justified in withholding support payments under the circumstances. The trial court erred in making this finding.

As pointed out above, past-due installments for support money under a divorce decree constitute fixed obligations payable at the respective times provided in the divorce decree for their payment, and to that extent the judgment contained in the divorce decree is a final one. The trial court does not have the power to modify the decree as to support

payments already accrued. *Pace v. Pace,* 67 Wn.2d 640, 409 P.2d 172 (1965); *Sanges v. Sanges,* 44 Wn.2d 35, 265 P.2d 278 (1953); *Pishue v. Pishue,* 32 Wn.2d 750, 203 P.2d 1070 (1949), and cases cited therein, and *Wilburn v. Wilburn, supra.* The children in this case were under 21 years of age at the time of the hearing and were neither self-supporting nor married. The order is, therefore, reversed with regard to the accrued payments owed by the father for the support of the children with directions to enter judgment against him for all support payments provided for in the divorce decree which shall have accrued since October, 1964.

The trial court's order with respect to the custody of the children is hereby vacated with directions to promptly hold a further hearing at which the parties may present such evidence as to the then existing conditions as the trial court may consider material to the custody issue. The trial court may make such order as to custody and as to future support payments as it deems appropriate in the light of the evidence presented at such hearing.

Because of the emergent situation involved with respect to the father's obligation to support his children, our remittitur shall issue forthwith upon the filing of this opinion. The appellant shall recover her costs on this appeal, and $350 attorney fees in connection therewith.

ROSELLINI, C. J., FINLEY and WEAVER, JJ., and LANGENBACH, J. Pro Tem., concur.