[No. 211-40757-1.    Division One.    April 20, 1970.]
Panel 2

EARL L. FOUTCH, *Respondent,* v. KATHERYN FOUTCH, *Appellant.*

*Whitmore, Powers, Manion & Ishikawa, Howard T. Manion,* and *Barbara Ohnick,* for appellant.

*Clodfelter, Lindell & Carr* and *Allen Lane Carr,* for respondent.

HOROWITZ, A. C. J.—Defendant, Katheryn Foutch, ex-wife of the plaintiff, Earl L. Foutch, appeals from a judgment determining the plaintiff's support money obligations for his children pursuant to a decree of divorce entered October 26, 1956. The hearing below commenced July 18, 1968, was held pursuant to the direction of the Supreme Court in *Foutch v. Foutch,* 69 Wn.2d 595, 419 P.2d 318 (1966). The opinion was filed October 20, 1966.

The original divorce decree of October 26, 1956, granted custody of the two minor children of the parties, Melody

and Raymond, then aged 10 and 8 years respectively, to the defendant mother. That decree ordered the plaintiff to pay $75 per month as support money for each child until he or she attained the age of 21 years or became self-supporting or married, whichever first occurred. About 8 years later the plaintiff instituted a proceeding for a modification of the divorce decree. Hearing was had thereon in February, 1965. The trial court then ordered the children's custody changed to that of the plaintiff father and terminated his support obligations under the decree. The defendant mother appealed and the judgment was reversed in *Foutch v. Foutch, supra.* In its opinion dealing with support for the children, the court stated at page 602:

> The provisions of the original divorce decree relative thereto continue in full force and effect as if the order of the trial court had never been entered. The father is liable for the support payments ordered by that decree until, by its terms, the obligation is at an end, *i.e.* until such time as either child reaches the age of 21, marries, or becomes self-supporting. The trial court is directed to enter an order requiring payment of the amounts accrued thereunder from the date of the last payment made by the father until such date as a rehearing of this matter is had, and to make such order for future child support payments as it deems proper.

The court reversed the decree, "with directions to enter judgment against him for all support payments provided for in the divorce decree which shall have accrued since October, 1964." (p. 603)[1]

As appears from the opinion, the trial court from whose

---

[1] It was also stated:

"We, therefore, remand this cause to the trial court with directions to make the necessary determinations of fact in the light of such evidence regarding the present condition of the children as may be presented by the parties at a further hearing, and to make such disposition as to their custody as in its discretion the evidence may warrant.

". . .

". . . The trial court may make such order as to custody and as to future support payments as it deems appropriate in the light of the evidence presented at such hearing." (*Foutch v. Foutch,* 69 Wn.2d 595, 601, 603, 419 P.2d 318 (1966)).

decree the appeal was taken received some evidence concerning employment undertaken by the children prior to the February, 1965, hearing. However pursuant to the directions of the Supreme Court, the court below took evidence to determine whether support money payments were owing by the plaintiff since February, 1965, plaintiff having made all payments required up to that date. The trial court below found that Melody was self-supporting from the date of the hearing in February, 1965, and that, accordingly, no further support money payments were owing by the plaintiff. The court also found that Raymond became self-supporting subsequent to February, 1965, and ordered the plaintiff to pay support money for a period of 3 months. No attorneys' fees were allowed to the defendant although claimed by her. The assignments of error raised by the defendant ex-wife involved the common question as to whether substantial evidence supports the court's findings on the question of child support and whether attorneys' fees to the defendant should have been allowed.

Preliminarily, we are met by the plaintiff's motion to strike the defendant's brief and to dismiss the appeal because her brief was filed at least 6 months late. The defendant moved to strike the plaintiff's brief and to deny him permission to argue this cause orally because his brief was filed 2 months late, thereby depriving the defendant of an opportunity to timely file a reply brief. Defendant's delay was caused by the illness of her counsel and plaintiff made no objection to the delayed filing until after the defendant's motion to strike and to deny the right to oral argument. Plaintiff's showing is that his delay in substantial part was due to protracted litigation requiring plaintiff's counsel's attention. Neither party obtained leave to extend the time for filing nor did either party stipulate to delayed filing by the other as is permitted by court rules. ROA I-41(1); CAROA 41(1). The motions of each party will be denied but costs will not be allowed for the respective briefs. CAROA 7, 41, 55.

Defendant contends that *Foutch v. Foutch, supra,* mandatorily requires the entry of a support money judgment against the plaintiff for all sums accruing from February, 1965 until Melody reached 21 on February 23, 1967; and that a similar support money judgment should be entered on account of Raymond from February, 1965 until he married in November, 1966. We do not so read the Supreme Court's opinion. In effect, the court ordered that the provisions of the original divorce decree entered October 26, 1956, be enforced

> as if the order of the trial court had never been entered. . . . The trial court is directed to enter an order requiring payment of the amounts *accrued thereunder* from the date of the last payment made by the father until such date as a rehearing of this matter is had . . .

(Italics ours.) *Foutch v. Foutch,* 69 Wn.2d 595, 602. Were we to adopt the interpretation urged by the defendant, we would fail to give effect to that part of the court's opinion at page 602 which reads:

> The father is liable for the support payments ordered by that decree until, *by its terms,* the obligation is at an end, *i.e.* until such time as either child reaches the age of 21, marries, or becomes self-supporting.

(Italics ours.)

We turn then to a consideration of the evidence below as to just when Melody and Raymond, respectively, became self-supporting.

■ Melody Foutch enrolled at the University of Washington in September, 1964. At the time of the February, 1965, hearing, Melody was employed part time at Rhodes of Seattle, using her earnings to help defray her college expenses. At the date of the hearing she was living with the parents of one of her friends by the name of Estus. Soon thereafter she moved to live with Bertha Strobach, a family friend, continuing to work part time as formerly. After living there a few months, about the first of May, 1965, she moved to the home of Robert and Betty Fletcher in Seattle.

She continued to work part time, first at Rhodes and then at Nordstroms. She lived with the Fletchers for almost 3 years. She became 21 on February 23, 1967. She remained with the Fletchers until September, 1967, when she moved to an apartment with a girl friend, sharing expenses. She graduated from the University of Washington in June, 1968, and married on June 7, 1968. While living at the Fletchers she was treated generously and as a member of the family. She not only received her board and room, but a salary as well for the performance of household duties. Her employment at Rhodes in 1966 earned her between $1,500 and $2,000. These earnings, together with her board and room and minor gifts made on occasion by her mother, other relatives and the Fletchers, were adequate to defray her living and college expenses until she graduated. The evidence that Melody had removed from her mother's home and was apparently self-supporting, with no showing that her mother contributed any substantial sums to her support or was required to do so leaves an inference that such support was not given because unnecessary. The making of occasional gifts in apparently minor amounts does not show that Melody was not self-supporting. See *Ditmar v. Ditmar,* 48 Wn.2d 373, 374, 293 P.2d 759 (1956). Although the evidence is not as clear as it might be as to the early months after February, 1965, (See *Mesher v. Connolly,* 63 Wn.2d 552, 388 P.2d 144 (1964)) there was substantial evidence and reasonable inferences therefrom to support the court's finding that Melody became self-supporting about the time of the February, 1965 hearing.

The trial court found that Raymond was dependent upon his mother, the defendant, at the date of the February, 1965 hearing and thereafter, and that she did provide him with support for a period of 3 months. The court further found that Raymond was employed at a variety of jobs "earning approximately $4,000 during the period of one year." The court concluded that except for the three support money payments totalling $225, the father was not liable for Raymond's support because "said Raymond Foutch was self-em-

ployed [sic] within the meaning of the divorce decree
. . . " The court's conclusion is apparently explained
by reference to the court's memorandum decision which
states that Raymond was "presumptively under his moth-
er's care and support . . . for the three months period
that he was with his mother and before he moved into his
apartment." The record shows that Raymond lived with his
mother from prior to February, 1965 until July, 1966. At
that time he left home on a permanent basis to live in an
apartment shared with two other boys. Prior to February,
1965, he had worked intermittently on a part time basis.
Subsequent to February, 1965 until February, 1966 he con-
tinued to work on a part time basis. Although the evidence
shows that his hourly rates for employment varied from
$1.50 to $2 per hour, the total time worked is not shown
and we are unable to determine from the record the total
earnings of Raymond from his intermittent and part time
employment. In February, 1966 he commenced working for
Lockheed Shipbuilding Company and continued in that em-
ployment until early in June, 1966. For this employment he
received total compensation of $2,196.30. From June, 1966,
until November, 1966, he had some employment. The rec-
ord does not show the source of his living expenses during
that period, but it is a reasonable inference, in the absence
of evidence to the contrary, that his living expenses were
derived from the proceeds of his prior Lockheed employ-
ment. He married on November 22, 1966.

We are unable to determine to what 3 month period the
court's conclusions refer. The evidence is uncontradicted
that he lived with his mother from February, 1965 to July,
1966, a period of 16 months. He became self-supporting in
February, 1966 when he commenced the Lockheed employ-
ment. Under these circumstances, he was not "self-support-
ing" from February 1965 to February, 1966, a period of 12
months, and, accordingly, the limitation of recovery for
unpaid support payments to 3 months was unduly re-
strictive.

It is true that the defendant did not testify. How-

ever, that fact does not aid plaintiff here. Until excused, plaintiff's obligation to make support money payments continued. *Faust v. Faust*, 103 Cal. App. 2d 755, 230 P.2d 408 (1951). The condition that Raymond become self-supporting was in the nature of a condition subsequent, and as in analogous breach of contract cases, the burden of proving the occurrence of a condition subsequent is upon the person claiming its benefit. 17A C.J.S. *Contracts* § 590 (1963); Restatement of Contracts § 250 (1932); cf., 24 Am. Jur. 2d *Divorce and Separation* §§ 819, 850, 852 (1966); cf., *Martin v. Martin*, 59 Wn.2d 468, 368 P.2d 170 (1962). Plaintiff might have called the defendant as an adverse witness or taken her deposition. He might have called the employers involved, as he did in the case of Lockheed, to testify to the amounts they paid Raymond for his services. Having failed to do so, he failed to show that Raymond had become self-supporting prior to the Lockheed employment in February, 1966. There was some suggestion below, although not clearly abandoned on appeal, that the refusal of Raymond to live with the plaintiff following the entry of the February, 1965 decree has a bearing on the question of the plaintiff's liability for support money payments. It is true that the February, 1965 judgment modifying the divorce decree of October 26, 1956, terminated the father's support obligations because the custody provisions of the decree were changed, transferring the custody to the father. The father testified he was willing to make his home available to his children and so informed them and their mother, the defendant, and then made no further support money payments. However, that judgment was reversed by the Supreme Court in *Foutch v. Foutch, supra,* with directions to reinstate the support provisions of the divorce decree "as if the order of the trial court had never been entered." The refusal of Raymond Foutch to live with the plaintiff, his father, under these circumstances is no defense.

In our opinion, on the basis of the evidence below, the judgment below should have required the making of 12 support payments ($900) instead of 3 ($225) for the period

February, 1965 to February, 1966 together with interest on each payment from the date it became due.

■ Defendant finally contends that the trial court erred in refusing to make any allowance to her for attorneys' fees. RCW 26.08.190. Child support money payments being here involved, the court properly seeks to make certain that the children's rights in such payments are not to be prejudiced for want of legal services for which an allowance must be made. *Fleming v. Fleming*, 58 Nev. 179, 72 P.2d 1110 (1937). See *Ditmar v. Ditmar*, 48 Wn.2d 373, 293 P.2d 759 (1956). Defendant wife, seeking to protect the receipt of support money payments, is entitled to an allowance for an attorneys' fee for this purpose upon a showing of her financial need and the husband's financial ability to pay. *Kain v. Kain*, 51 Wn.2d 387, 318 P.2d 955 (1957); *Christopher v. Christopher*, 62 Wn.2d 82, 381 P.2d 115 (1963); *Koon v. Koon*, 50 Wn.2d 577, 313 P.2d 369 (1957); *Gibson v. Von Olnhausen*, 43 Wn.2d 803, 263 P.2d 954 (1953).

At the time of the hearing below the defendant, who had remarried in June, 1957, was divorced. The plaintiff had remarried in 1966, his second wife having brought to the marriage her two teenaged daughters. His remarriage, however, did not excuse his performance of his support money decree obligations. See *Knittle v. Knittle*, 2 Wn. App. 208, 467 P.2d 200 (1970). The court trial below commenced July 18, 1968, a little over 20 months after the filing of the opinion on the first appeal. No additional evidence was offered below as to the defendant's financial need nor the plaintiff's financial ability to pay. However, the Supreme Court's opinion on the prior appeal noted that the defendant had an annual income of $4,000 earned as a real estate agent working on commissions and that the plaintiff's annual income was approximately $8,000. The Supreme Court, on the basis of the record before it, made an allowance of $300 to the defendant ex-wife as attorneys' fees on appeal. If the income of the respective parties presumptively remained the same at the time of the hearing

below, as it appeared to be at the time of the filing of the Supreme Court's opinion, then the opinion of the Supreme Court in effect constituted a recognition of the defendant's need for an attorneys' fee allowance. It is true that the trial court's decree, reversed by the decision of the Supreme Court, made no attorneys' fee allowance for service in the trial court. At that time the defendant was still married to her second husband. At the time of the appeal she was divorced and the fact of divorce may have been the reason for the Supreme Court's attorneys' fee allowance because of need. The evidence in the trial court in the instant case showed that the plaintiff was employed, but there was no testimony as to his income from that employment. The trial court's memorandum decisions below make no reference to the allowance or disallowance of attorneys' fees, nor do the findings or conclusions deal with the subject. Possibly the failure of the trial court to make an allowance for attorneys' fees may have been influenced by the lack of additional evidence concerning her financial need and concerning the husband's financial ability to pay; and by the defendant's limited success below. *Rentel v. Rentel,* 39 Wn.2d 729, 735, 238 P.2d 389 (1951). In our opinion under the peculiar facts of this case, justice requires that in addition to judicially noticing the record on the prior appeal (*Perrault v. Emporium Dept. Store Co.,* 83 Wash. 578, 145 P. 438 (1915)) the trial court should receive any additional evidence there may be concerning the income and financial resources of the respective parties (See *Long v. Long,* 39 Ariz. 271, 5 P.2d 1047 (1931); *Fleming v. Fleming, supra*) for the period from October 20, 1966, to the date of the remand hearing. The trial court will then be in a position to determine the existence of need and financial ability to pay on the issue of attorneys' fees both in the trial below and on the present appeal. We recognize, however, that the remand hearing might have been unnecessary had the additional evidence been offered at the trial below. We have concluded that if the failure to offer additional evidence of need and ability to pay is upon the remand hearing found

to have been unjustified, no further attorneys' fee allowance shall be made for legal services in the remand hearing. We believe that it would be unduly harsh to impose a similar sanction on the attorneys' fee allowance for services in the trial below and on appeal.

The judgment below is modified in accordance with this opinion. In all other respects it is affirmed.

UTTER and WILLIAMS, JJ., concur.