[No. 31730.   Department Two.   October 18, 1951.]

J. Howard McGrath, *as Attorney General of the United States, Appellant,* v. Gordon Davis, *as Executor, Respondent.*[1]

*J. Charles Dennis* and *John E. Belcher* (*Harold I. Baynton, Thomas H. Creighton, Jr., George B. Searls,* and *Ralph S. Spritzer,* of counsel), for appellant.

*Lycette, Diamond & Sylvester* (*Herman Howe,* of counsel), for respondent.

[1]Reported in 236 P. (2d) 765.

HILL, J.—We are here confronted with questions as to the status of past-due payments under a separate maintenance decree, and whether the right to receive them is such a right or interest as may be transferred to and vested in the alien property custodian.

This is an action by the attorney general of the United States, as alien property custodian, to recover from the estate of August Bunzen payments aggregating thirty-six hundred dollars to which Louise Bunzen, his wife, a German citizen and resident, became entitled under the terms of a separate maintenance decree entered by the superior court for King county April 17, 1915. By that decree Bunzen was directed to pay his wife fifty dollars a month for her support and maintenance, beginning May 1, 1915, and continuing until further order of the court. Payments were made until May, 1941, but no payments were made thereafter. (Apparently no question arose as to payments accruing during World War I; at least, there is no reference to it in the record.)

Bunzen died January 25, 1948. Mrs. Bunzen, by her attorney in fact, filed a creditor's claim against the estate of her deceased husband in the amount of thirty-six hundred dollars plus interest on the monthly installments as they became due, for the six-year period immediately preceding his death. A substitute claim in the same amount was later filed in her behalf by the United States attorney for the western district of Washington acting for the alien property custodian. The executor rejected both claims.

Mrs. Bunzen then brought suit upon her rejected claim. A demurrer to her complaint was sustained and the action dismissed. This we affirmed on appeal, holding that the demurrer was properly sustained because she was not the real party in interest and had no legal capacity to sue. *Bunzen v. Davis*, 36 Wn. (2d) 778, 220 P. (2d) 653.

The attorney general, as alien property custodian, brought the present action on the rejected claims. From a judgment of dismissal entered after a trial on the merits, he appeals.

The first assignment of error is that the trial court erred

in its conclusion of law that the past-due installments under the separate maintenance decree were subject to modification and anulment, and that they did not constitute a fixed obligation.

Past-due installments under a separate maintenance decree constitute a fixed obligation at the time provided in the decree for their payment, and to that extent the judgment is a final one. *Harris v. Harris,* 71 Wash. 307, 128 Pac. 673; *Beers v. Beers,* 74 Wash. 458, 133 Pac. 605; *Boudwin v. Boudwin,* 159 Wash. 262, 292 Pac. 1017; *Phillips v. Phillips,* 165 Wash. 616, 6 P. (2d) 61; *Schumacher v. Schumacher,* 26 Wn. (2d) 23, 172 P. (2d) 841. And the power to modify a decree as to installments past due and unpaid does not exist. *Beers v. Beers, supra; Kinne v. Kinne,* 137 Wash. 284, 242 Pac. 388; *Pishue v. Pishue,* 32 Wn. (2d) 750, 203 P. (2d) 1070. While the cases cited have to do with past-due installments of support money and alimony under divorce decrees, the reasoning is equally applicable to past-due installments under a separate maintenance decree.

In *Shibley v. Shibley,* 181 Wash. 166, 42 P. (2d) 446, 97 A. L. R. 1191, we held that where a decree in a separate maintenance action had been rendered in a California court, the wife was entitled to a judgment in the courts of this state for the payments already accrued and unpaid under that decree, the Washington judgment to provide for its enforcement as a decree in equity. Three judges dissented, but they, too, were agreed that the wife was entitled to a judgment for the money due and unpaid under the separate maintenance decree, and differed from the majority solely on the question of whether she was entitled to the equitable remedy of enforcement by contempt proceedings. See, also, *Simonton v. Simonton,* 40 Idaho 751, 236 Pac. 863, 42 A. L. R. 1363.

The many cases cited by respondent holding that decrees for alimony, support money, and separate maintenance are not final judgments but are subject to modification to meet new and changing conditions, state a rule over which there is no controversy and are beside the point. The few cases cited

actually holding that such a decree may be modified as to installments which have already accrued, represent the minority view (see annotations, 94 A. L. R. 331 and 1 A. L. R. (2d) 1423), which we are unwilling to adopt.

We are in agreement with appellant on the first assignment of error.

The second assignment of error is that the trial court erred in making its conclusion of law that Mrs. Bunzen's rights under the decree were personal to her and were of such a character as not to be subject to seizure by the United States under the trading with the enemy act.

Acting under the authority of § 7 (c) of that act, as amended, which reads in part as follows:

"If the President shall so require any money or other property including (but not thereby limiting the generality of the above) patents, copyrights, applications therefor, and rights to apply for the same, trade marks, *choses in action, and rights and claims of every character and description owing or belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy or ally of enemy* not holding a license granted by the President hereunder, which the President after investigation shall determine is so owing or so belongs or is so held, shall be conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or the same may be seized by the Alien Property Custodian; and all property thus acquired shall be held, administered and disposed of as elsewhere provided in this Act" (Italics ours) (50 U. S. C., App. § 7 (c) );

the President issued executive order 9095, which, as subsequently amended by executive orders 9193, 9567, and 9788 (50 U. S. C. 5645, 5648), gives the attorney general,. as alien property custodian, the authority and power

". . . to take such action as he deems necessary in the national interest, including, but not limited to the power to direct, manage, supervise, control or vest, with respect to: . . .

"(c) any other property or interest within the United States of any nature whatsoever owned or controlled by, payable or deliverable to, held on behalf of or on account of, or owing to, or which is evidence of ownership or control by, a designated enemy country or national thereof. . . ."

Pursuant to executive order 9095 as amended, the attorney general, as alien property custodian, issued an order vesting in himself the rights of Mrs. Bunzen to all amounts due under the separate maintenance decree, which vesting order is set out in full in *Bunzen v. Davis, supra.*

In that case *(Bunzen v. Davis, supra)*, the respondent (the executor of the estate) stated in his brief:

"The claim upon which plaintiff [appellant] has brought suit was vested in the Attorney General of the United States on November 2, 1948, and it is obvious that the Attorney General, or the United States, is not only a proper party, but is a necessary party to any action based upon the claim sued upon, because the absolute title to the claim is held by the Attorney General on behalf of the United States. The demurrer to the complaint was therefore properly sustained for the reason that the real party in interest was not joined as plaintiff in the case."

However, on further investigation, the executor concluded, and in the present case urges, that any right or interest which Mrs. Bunzen had was purely personal and could not be transferred to the attorney general as alien property custodian, or to anyone else.

It is our view that he was right the first time, and that the Minnesota supreme court correctly answered his present contention in the case of *Todeva v. Oliver Iron Mining Co.*, 232 Minn. 422, 45 N. W. (2d) 782, decided in January, 1951. In that case it was contended that the interest of a widow living in Bulgaria in a Minnesota compensation award of $13.29 a week because of the death of her husband in extrahazardous industry, was purely personal, nonassignable, and subject to termination on her death or remarriage, and hence the right to receive the same could not be vested in the alien property custodian. The Minnesota court, speaking of the character of the award to the widow, said:

"It is unique in that it cannot be surrendered by agreement, assigned, or transmitted to the possessor's heirs, and in that it is subject to defeasance for failure of the possessor to remain single or to survive, yet it is a bona fide right of property";

and then continued:

"Without question, Executive Order No. 9095, *supra,* which authorized the custodian to vest in himself any property right or interest of an enemy national, and Vesting Order No. 5974, issued pursuant thereto, were both broad and inclusive enough to cover Mrs. Todeva's entire property right in the award, both as to accrued and as to future installments of compensation."

The statute and the executive order issued pursuant thereto under which the vesting order in this case was made, were broad and inclusive enough to cover Mrs. Bunzen's interest in the unpaid installments under the separate maintenance decree which had accrued during the six years prior to Mr. Bunzen's death.

The second assignment of error is therefore well taken.

■ The third assignment of error is that the trial court erred in making the conclusion of law that the wartime prohibition of payments to German nationals terminated Mr. Bunzen's obligation to make the payments provided for in the separate maintenance decree.

It is conceded that Mr. Bunzen was not free to make the payments to his wife in Germany during the six-year period immediately preceding his death. However, the trading with the enemy act did not destroy Mrs. Bunzen's substantive rights, and there was no termination of Mr. Bunzen's obligations under the separate maintenance decree. The moment the vesting order was issued, all accrued payments became due and payable to the alien property custodian to the same extent that they would have been payable to Mrs. Bunzen. *Todeva v. Oliver Iron Mining Co., supra.*

The third assignment of error is also well taken.

The judgment of dismissal is reversed, and the cause remanded with instructions to enter a judgment for the appellant in the amount of thirty-six hundred dollars, with interest computed only from November 2, 1948, the date of the vesting order, as at no time prior to that date within the six-year period with which we are here concerned

could Mr. Bunzen in his lifetime, nor his executor after his death, have made the payments provided for in the separate maintenance decree. See *Todeva v. Oliver Iron Mining Co., supra.*

HAMLEY, DONWORTH, FINLEY, and OLSON, JJ., concur.