904 P.2d 1150 (1995)
128 Wash.2d 116
In re the MARRIAGE OF John A. SHOEMAKER, Petitioner, and
Pamela Rushing, f/k/a Shoemaker, Respondent.
No. 62169-1.
Supreme Court of Washington, En Banc.
November 9, 1995.
John A. Shoemaker, Port Orchard, pro se.
The Public Advocate, Michael W. Louden, Seattle, for petitioner.
The Paja Law Firm, Marilyn Paja, Port Orchard, Cynthia D. Rosa, Bremerton, for respondent.
JOHNSON, Justice.
The trial court in this case vacated a child support order entered 5 years previously which modified the terms of the original dissolution decree. Under the vacated order, each parent had custody of one child and neither was obligated to pay child support. The effect of the court's decision was to reinstate the child support obligation contained in the original decree requiring the father to pay support. Judgment was then entered against the father for past support. He appealed and the Court of Appeals affirmed. We reverse the trial court and the Court of Appeals.
*1151 John and Pamela Shoemaker were divorced in 1980 in Kitsap County Superior Court. They had two children, Lisa, then 10, and Annetra, then 6. In the initial proceeding, Pamela was awarded custody of both children and John was ordered to pay child support of $165 per child per month.
The parties continued their legal sparring. John Shoemaker (Shoemaker) immediately filed a motion for reconsideration, followed over the next 2 years by a series of motions for contempt, alleging his ex-wife was not living up to the terms of the decree.
In 1982, Lisa decided to live with her father, who was by this time remarried. At this time, Shoemaker apparently stopped paying child support for Lisa.[1] In 1983, he successfully sought modification orders with regard to both custody and child support. By the terms of a 1983 default order, Shoemaker was relieved of any child support obligations.
In July 1985, the parties entered into a stipulated order of modification. Under the terms of this second order, Shoemaker and Pamela Shoemaker Rushing (Rushing) were to have joint custody. The primary caretaker roles were to be switched, Lisa going to Rushing and Annetra to Shoemaker. Neither party was to pay child support.
This arrangement lasted 1 month. Rushing had recently remarried, and her husband had received a job assignment to the Philippines. The parties entered into an agreement voluntarily switching back to the 1983 arrangement for a 1-year period. This agreement was never filed with the court.
Things apparently did not go well for Lisa and her father. According to him, he decided to send Lisa to her mother to get her away from her friends. According to Rushing, Shoemaker kicked Lisa out soon after she got there, and she went to live with friends. When the school year ended, she joined her mother. In June 1986, when Lisa arrived in the Philippines, her sister was due to return to her father. Rushing refused to return Annetra. Annetra talked by telephone with the guardian ad litem, who concluded it was Annetra's desire to remain with her mother. Thus, beginning in June 1986, both girls resided with Rushing.
During the next couple years, Shoemaker visited his daughters once in the Philippines, and Annetra visited him on a vacation in the United States. In March 1988, Lisa turned 18, and in August, she joined the military. That same month, Rushing and her family moved back to Kitsap County. During this time Shoemaker paid no support. He did not take legal action to regain custody of either daughter, and Rushing did not seek modification of the child support order. Both parties assert the distance involved made legal proceedings difficult and expensive.
In November 1990, Rushing filed a petition for modification of custody to reflect that Annetra lived with her. She also asked for child support, including post majority support so Annetra could attend college. In a separate motion Rushing asked for back child support for Lisa from June 1986 until August 1988 and for Annetra from June 1986 through 1990, based on the fact that both children had resided with her during this period.
In May 1991, a superior court commissioner ordered future child support for Annetra at $300 per month, a downward deviation from the support schedule to account for the fact Shoemaker was supporting two adopted and two natural children from his current marriage. The question of post high school support was deferred. These decisions have not been appealed.
The commissioner also vacated the 1985 modification order, and reinstated the original decree terms calling for child support in the amount of $165 per child per month. He based his decision on his finding the parties had "never carried through" with their 1985 agreement, expressly relying on Foutch v. Foutch, 69 Wash.2d 595, 419 P.2d 318 (1966). He rejected Shoemaker's assertion of laches and found it would be in the interest of *1152 justice to reinstate the original decree. A judgment was entered ordering Shoemaker to pay $13,800 in back support and $4,748.45 in prejudgment interest.
Shoemaker moved to revise the commissioner's ruling. The Honorable Karen B. Conoley reversed the prejudgment interest award, but affirmed the back support order. Shoemaker appealed, and the Court of Appeals, Division II, in an unpublished opinion affirmed. Shoemaker v. Rushing, No. 15414-5-II, slip op. at 5 (June 13, 1994). Shoemaker appealed and we accepted review.
The issue before us is whether the trial court had authority to vacate a 5-year-old modification order, based upon changed circumstances, when the effect was to retroactively create a back child support obligation. The appellant argues the court had no authority, under either Superior Court Civil Rule (CR) 60(b) or RCW 26.09.170, to vacate its prior modification order.
The doctrine of res judicata or claim preclusion ensures finality of judgments. Marino Property Co. v. Port Comm'rs, 97 Wash.2d 307, 312, 644 P.2d 1181 (1982). Once a judgment is final, a court may reopen it only when specifically authorized by statute or court rule. See Lejeune v. Clallam Cy., 64 Wash.App. 257, 269, 823 P.2d 1144, review denied, 119 Wash.2d 1005, 832 P.2d 488 (1992). CR 60 sets forth the general conditions under which a party may seek relief from judgment. RCW 26.09, which governs dissolution actions, sets forth additional grounds applying solely to such actions. See In re Marriage of Timmons, 94 Wash.2d 594, 597-99, 617 P.2d 1032 (1980).
The application of CR 60 is within the discretion of the trial court, and we review only for abuse of discretion. In re Marriage of Flannagan, 42 Wash.App. 214, 222, 709 P.2d 1247 (1985), review denied, 105 Wash.2d 1005 (1986). In this case, Rushing did not argue to the trial court that CR 60 applied nor did the court mention the rule in its oral ruling. Under these circumstances, we have nothing to review and therefore do not decide whether CR 60 could have formed a basis for the trial court's decision.
Turning to the statute, we find no authority for the court's action in vacating the modification. RCW 26.09.170 sets forth the conditions for modifying a child support order. In relevant part, it provides:
Except as otherwise provided ... the provisions of any decree respecting maintenance or support may be modified: (a) Only as to installments accruing subsequent to the petition for modification....
RCW 26.09.170(1). This section, enacted in 1973, reflects long-settled law in this state that a modification of child support may not operate retroactively. See Wilburn v. Wilburn, 59 Wash.2d 799, 801-02, 370 P.2d 968 (1962); Koon v. Koon, 50 Wash.2d 577, 579, 313 P.2d 369 (1957); Sanges v. Sanges, 44 Wash.2d 35, 38-39, 265 P.2d 278 (1953); McGrath v. Davis, 39 Wash.2d 487, 489, 236 P.2d 765 (1951); Kinne v. Kinne, 137 Wash. 284, 242 P. 388 (1926); Beers v. Beers, 74 Wash. 458, 133 P. 605 (1913).
When the trial court vacated the child support order in this case, it reinstated the applicable terms of the original divorce decree. Those terms called for a payment of $165 per child per month by Shoemaker to Rushing. Applying these terms over the previous 5 years instantly created a $13,800 back support obligation on the part of Shoemaker, despite the fact he had always been in compliance with then existing court support orders. Although here the court "vacated" one order and "reinstated" another, the effect was a retrospective modification and thus legally prohibited.
Rushing argues this court created an exception to the prohibition against retroactive modification in Foutch v. Foutch, 69 Wash.2d 595, 419 P.2d 318 (1966). In that case, the trial court had changed custody of the couple's two children from the mother to the father and relieved the father from further support payments. The mother appealed. During pendency of the appeal, the children continued to live with their mother and the father did not contribute to their support. Because of additional changes during this period of time, we remanded, rather than affirming or reversing. Foutch, 69 Wash.2d at 601, 419 P.2d 318. We also vacated the modification order which had been appealed *1153 in order to reinstate the father's child support obligation because the children's mother had actually been the person supporting them during the appeal period. Foutch, 69 Wash.2d at 603, 419 P.2d 318.
Foutch does not provide trial courts with authority to vacate child support orders. The modification order in question was on appeal. It was not yet final for purposes of res judicata, and this court therefore had the power to vacate. In sending the case back to the trial court, we reversed a portion of the order which had excused past due child support. Foutch, 69 Wash.2d at 603, 419 P.2d 318. We specifically noted the trial court's authority was limited to prospective modification. Foutch, 69 Wash.2d at 602-03, 419 P.2d 318.
Rushing also argues that, notwithstanding the statute, trial courts have equitable powers to make retrospective modifications when required to reach a just result, citing several prior cases of this court.
In Schafer v. Schafer, 95 Wash.2d 78, 621 P.2d 721 (1980), we held special circumstances of an equitable nature might justify crediting payments made directly to the children against the accrued support obligation, so long as it could be done without injustice to the one to whom the decree had ordered payment. Schafer, 95 Wash.2d at 81, 621 P.2d 721. The court followed closely its earlier decision in a similar case, Martin v. Martin, 59 Wash.2d 468, 473, 368 P.2d 170 (1962).
In Hartman v. Smith, 100 Wash.2d 766, 769, 674 P.2d 176 (1984), another child support case, we approved the application of "equitable principles to mitigate the harshness of some claims for retroactive support when it did not work an injustice to the custodian or to the child". Accord In re Marriage of Hunter, 52 Wash.App. 265, 270, 758 P.2d 1019 (1988), review denied, 112 Wash.2d 1006 (1989); In re Marriage of Watkins, 42 Wash.App. 371, 710 P.2d 819 (1985), review denied, 105 Wash.2d 1010 (1986).
None of these cases, however, hold a trial court has unfettered discretion in the exercise of its equitable powers. We agree with the Court of Appeals in Hunter that the trial court's power can only be exercised within the "framework of established `equitable principles'." Hunter, 52 Wash.App. at 269, 758 P.2d 1019 (quoting Hartman, 100 Wash.2d at 769, 674 P.2d 176).
In each of the above cases, the person obligated to pay support sought relief from past due amounts. In Schafer, we allowed an equitable credit for payments made directly to the children. Schafer, 95 Wash.2d at 81-82, 621 P.2d 721. In Hartman, we permitted an equitable estoppel defense. Hartman, 100 Wash.2d at 769, 674 P.2d 176. In Watkins, the Court of Appeals extended the concept to laches. Watkins, 42 Wash. App. at 374, 710 P.2d 819. In each case, the court did no more than recognize the use of a traditional equitable defense in the context of child support.
In contrast, here the court is being asked to use its equitable powers to create a child support obligation 5 years after the need for support arose. Such a result has been allowed rarely and only in cases where the dissolution decree is silent as to support. See Scott v. Holcomb, 49 Wash.2d 387, 389, 301 P.2d 1068 (1956); Henry v. Russell, 19 Wash.App. 409, 412, 576 P.2d 908, review denied, 90 Wash.2d 1018 (1978); Penn v. Morgan, 7 Wash.App. 794, 797, 502 P.2d 1238 (1972). The right of equitable contribution defined in these cases was limited to an amount equal to one-half of the actual expenditures on behalf of the child. Henry, 19 Wash.App. at 412, 576 P.2d 908. Furthermore, the right existed only because the decree was silent. The court's subsequent order in these cases was not a modification at all.
In summary, the use of a procedural devicevacationto retroactively adjust the obligations of the parties violates the child support statute and cannot be justified by equitable principles. Therefore we reverse the trial court and vacate Shoemaker's back support order.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, MADSEN and PEKELIS, JJ., concur.
*1154 TALMADGE, Justice (dissenting).
I dissent. The real issue in this case is whether the trial court had authority to vacate a five-year-old modification order, based upon concededly changed circumstances. The majority determines that the trial court has no such authority under CR 60(b), or RCW 26.09.170, or equitable principles. I disagree and would hold that the trial court plainly had the authority to vacate a modifiable order for child support under equitable principles.[1]
As the majority concedes, courts in Washington have inherent equitable power to modify dissolution decrees, if the circumstances of the decree have changed. Majority op. at 1153. Schafer v. Schafer, 95 Wash.2d 78, 621 P.2d 721 (1980). See also Wash. Const, art. IV, § 6. Indeed, at common law, any court of record had the inherent power to set aside its own judgments. See A.C. FREEMAN, LAW OF JUDGMENTS § 194 (1925). This power was subject to various restraints, but every state recognized a court's power to vacate or modify a judgment.
Once changed circumstances have been shown, modification is appropriate because dissolution decrees are not like ordinary civil judgments.[2] Ordinarily, a judgment reflects an adjudication of the rights of the parties as to events which have already taken place. Id. § 253. Subsequent events usually have no relevance to that judgment. Id. Dissolution decrees, with their child support and custody provisions, are forward-looking and reflect a need for continuing judicial involvement in the subject matter of the decree. For this type of judicial action, justice may demand modification based upon substantial changes in the underlying circumstances which could not have been anticipated when the decree was entered. The RESTATEMENT (SECOND) OF JUDGMENTS recognizes this principle:
[A] judgment may be set aside or modified if:
(1) The judgment was subject to modification by its own terms or by applicable law, and events have occurred subsequent to the judgment that warrant modification of the contemplated kind; or
(2) There has been such a substantial change in the circumstances that giving continued effect to the judgment is unjust.
RESTATEMENT (SECOND) OF JUDGMENTS § 73 (1982). According to the commentary accompanying this section, its purpose "is to change the obligation created by the judgment in the response to post-judgment events that substantially alter the intended balance of benefit and burden resulting from the judgment."
The court of appeals determined that the trial court had equitable authority to vacate the 1985 decree based on Foutch v. Foutch, 69 Wash.2d 595, 419 P.2d 318 (1966). The majority states that Foutch is inapposite because the case involved this court's exercise of its appellate authority to overturn a nonfinal trial court order. The majority further notes the Foutch court reaffirmed the principle that the trial court's authority was limited to prospective modification of child support orders. Majority op. at 1152-1153. The majority's interpretation of Foutch is narrow and obscures the unique facts of that case.
The trial court in Foutch vacated a dissolution decree entered eight years before. The decree awarded custody of the two children to the wife and required the husband to pay support of $75 per month for each child. The husband asserted he terminated payment of support when he learned that his daughter, an honor student about to enter college, had left home because of problems with her stepfather, and because his son had chronic truancy problems. The trial court modified the decree to give custody to the *1155 father, based on the best interests of the children, hoping that with custody the father would provide help to his college-bound daughter. The father suggested to the trial court he would do so. In fact, this court learned in oral argument that the father not only did not help his daughter, he refused to support either child, and both children lived elsewhere.
Noting the changed circumstances of the case on appeal, we vacated the trial court's order without reversing or affirming it:
We, therefore, remand this cause to the trial court with directions to make the necessary determinations of fact in the light of such evidence regarding the present condition of the children as may be presented by the parties at a further hearing, and to make such disposition as to their custody as in its discretion the evidence may warrant. This is in accord with our recent decision in Jones v. Jones, 68 Wn.2d 413, 413 P.2d 338 (1966).
This case is unique in this respect: the time within which the trial court must act is now very short. The hope of the trial court that the father would voluntarily assist Melody financially with her education has not been realized. The trial court cannot retroactively modify its previous order to require payment of support for Melody by the father from the time of the entry of that order to the present. Wilburn v. Wilburn, 59 Wn.2d 799, 370 P.2d 968 (1962). Melody will be 21 years old in February, 1967, at which time the father's obligation to contribute to her support will cease. Therefore, the trial court's further order requiring the father to pay support from the time of the further hearing on his petition until she reaches her majority would be of little financial benefit to her.
In order for Melody to receive that to which she is entitled from her father, and in order for substantial justice to be done with regard to Raymond, we hereby vacate the order of the trial court in so far [sic] as it terminates the father's obligation to pay support for the children. The provisions of the original divorce decree relative thereto continue in full force and effect as if the order of the trial court had never been entered. The father is liable for the support payments ordered by that decree until, by its terms, the obligation is at an end, i.e. until such time as either child reaches the age of 21, marries, or becomes self-supporting. The trial court is directed to enter an order requiring payment of the amounts accrued thereunder from the date of the last payment made by the father until such date as a rehearing of this matter is had, and to make such order for future child support payments as it deems proper. See State ex rel. Kibbe v. Rummel, 36 Wn.2d 244, 217 P.2d 603 (1950).
One other issue is raised by appellant. The father, upon learning from his investigation that the boy was neither working nor attending school, and that Melody had moved to the home of a girl friend, on the advice of his attorney ceased payment of monthly support. The trial court found that he was justified in withholding support payments under the circumstances. The trial court erred in making this finding.
Id. at 601-02, 419 P.2d 318.
The Foutch court did equity. The Foutch decision in no way undercuts the trial court's authority in this case to vacate an order on equitable grounds where the circumstances of the parties have changed.
The majority's principal fear is that the recognition of an equitable basis here for modification of the 1985 order constitutes, in effect, a retroactive modification prohibited by RCW 26.09.170. This fear is unfounded.
The custody and support provisions of the 1980 decree and 1983 order were extinguished by the terms of the 1985 order. Once the trial court vacated the 1985 order, there was no applicable child support provision. A judgment vacated by a valid order "is entirely destroyed, and the rights of the parties are left as though no such judgment had ever been entered." Weber v. Biddle, 72 Wash.2d 22, 28, 431 P.2d 705 (1967).
Thus, the cases cited by the majority in its opinion at 1153, which create a right of equitable contribution where the decree is silent, are pertinent. Scott v. Holcomb, 49 Wash.2d 387, 301 P.2d 1068 (1956); Henry v. Russell, *1156 19 Wash.App. 409, 576 P.2d 908, review denied, 90 Wash.2d 1018 (1978); Penn v. Morgan, 7 Wash.App. 794, 502 P.2d 1238 (1972). The trial court must be allowed to fashion a proper child support order.

CONCLUSION
A court's equitable power to vacate an order should be exercised only when the usual statutory or rule procedures for vacation or modification of an order have been exhausted, and the circumstances for vacation or modification are compelling. But this court should not be reluctant to exercise its equitable power in this case, particularly where a sensitive issue of child support is at stake. A decree provided for child support in 1980. An unusual default order extinguishing child support was entered in 1983. The parties then agreed to a new child support provision in 1985. The circumstances that formed the basis for the 1985 provision changed within a month of entry of the order. The children still needed support, although the majority turns a blind eye to that fact. Only the mother provided that support. The trial court had equitable authority to vacate the 1985 order and, upon the silence of the decree as to support at that point, make proper provision for support of the children. The trial court and the court of appeals did the right thing, and so should we.
NOTES
[1] Shoemaker disputes this contention in one pleading, but his other pleadings talk only about continuing to pay child support for Annetra.
[1] I generally agree with the majority's interpretation of RCW 26.09.170. I also agree that Rushing failed to argue a basis in CR 60 for modification of the 1985 order so that issue is not before us. However, I disagree with the majority that the inquiry ends at this point.
[2] Orland and Tegland have even speculated that the rules governing modification of dissolutions are apart from CR 60(b). 4 LEWIS H. ORLAND AND KARL B. TEGLAND, WASHINGTON PRACTICE: RULES OF PRACTICE, 713 (4th ed. 1992). In fact, CR 60(c) specifically preserves the power of the court to entertain independent actions to set aside a judgment.