FILED
COURT OF APPEALS
DIVISION II

2015 AUG -4 AM 9: 59

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

In the Matter of the Marriage of:

DESTRY L. EDWARDS,

          Respondent/Cross Appellant,

v.

REBECCA E. EDWARDS,

          Appellant/Cross Respondent.

No. 46142-1-II

UNPUBLISHED OPINION

BJORGEN, J. — In these disputes arising from dissolution of their marriage, Rebecca Edwards appeals (1) the trial court's refusal to award the community property interest in Destry Edwards's naval pension to her and Destry as tenants in common and (2) the trial court's order requiring her to pay back child support to Destry for the period between July and November 1, 2012.[1] Destry cross appeals (1) the trial court's order that he and Rebecca share equally the guardian ad litem (GAL) fees, (2) the trial court's refusal to order Rebecca to pay child support from December 2012 to July 2013, and (3) its order requiring him to pay back child support from July 2013 to February 2014.

We hold that the trial court (1) correctly declined to award any interest in Destry's naval pension to Rebecca, but (2) erred in ordering Rebecca to pay back child support before the date of Destry's petition to modify an existing child support order. We further hold that Destry waived his alleged errors on cross appeal and do not address them. Consequently, we affirm in

---

[1] We refer to the parties by their first names for clarity. No disrespect is intended.

part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

## FACTS

Destry and Rebecca married in 1995. The two separated in 2007, and Destry later moved to dissolve the marriage. Upon dissolution, the trial court entered three orders of relevance to the appeals before this court.

First, the trial court entered a parenting plan proposed by Destry and Rebecca. The plan designated Rebecca as the primary parent for her and Destry's only child, a daughter. Another provision authorized Rebecca to relocate to Virginia with their daughter, and she later did so.

Second, the trial court entered a final order of child support. Based on the parties' incomes, the trial court ordered a standard support payment of $562 per month from Destry and $252 per month from Rebecca. The order designated Destry as the obligor parent and Rebecca as the obligee parent.

Third, the trial court entered a decree of dissolution and stipulated findings of fact and conclusions of law, including an itemization titled "Schedule A" of the parties' community and separate property. Clerk's Papers (CP) at 40. Among the assets listed in Schedule A was the couple's interest in real property in Oklahoma. The decree itself incorporated Schedule A as its division of the couple's separate and community property, awarding the Oklahoma property to Destry.

Another provision of the decree discussed the award of Destry's naval pension to Rebecca, stating:

> The wife is awarded as her separate property the following property[:]
> . . .
> The Respondent should be awarded 25% of the Petitioner's Military Retired Pay for twelve (12) years. The maximum military pay grade at which the Petitioner's

2

military pay will be calculated for purposes of this decree is E-7. The maximum number of years for creditable service will be 20 years.

CP at 43. The decree left this provision unchecked and therefore inoperable.

The decree did provide, however, that Destry would pay spousal maintenance. Specifically, it required that he pay off Rebecca's car loan by making monthly payments of $425 to the loan's noteholder. The decree also provided that, if Rebecca sold that car and purchased a replacement, Destry would make the maintenance payments directly to her.

The specific events leading to this appeal began in 2012, when Rebecca agreed to send the couple's daughter to visit Destry from July until no later than mid-November. Destry later alleged that the daughter wanted to live with him, and he refused to send her back to Rebecca. Considering this a breach of the parenting plan, Rebecca moved for contempt.

Destry responded on September 20, 2012 by filing a petition to modify the parenting plan to make him the primary parent and a motion to adjust the child support order to require Rebecca to make transfer payments to him in accordance with the child support schedule.

By order filed November 21 2012, the trial court found adequate cause for a hearing on the petition to modify the parenting plan. Consequently, it ordered that

> [t]he matter is set for hearing or trial at the date or time established or to be established. The parties shall schedule a settlement conference in an expedited manner, and it has been set for December 21, 2012 at 2:30.

> The court also heard argument on the mother's Motion for Back Support. The court finds that no past due child support is due the mother, and the father's child support obligation is suspended.

CP at 357.

3

The parties settled the bulk of their dispute before trial. Based on that settlement, the trial court entered a final parenting plan in July 2013, which again designated Rebecca the primary parent.

Even with the entry of this new parenting plan, a number of unsettled issues remained between the parties, which the trial court confirmed for trial. These issues included a dispute over Destry's naval pension, disputes over back child support in the wake of the order suspending Destry's support obligation, and a dispute over the division of GAL fees between the parties.

The first of these issues arose from Rebecca's contention that she was entitled to an interest in Destry's naval pension.[2] At trial, Rebecca testified that she was "expecting to get some retirement" in the dissolution, but had not. Verbatim Report of Proceedings (VRP) (Dec. 23, 2013) at 36. She argued that by operation of law, former spouses become tenants in common in any property not awarded in a decree of dissolution and that the decree dissolving her marriage to Destry had failed to award the pension.

Destry disagreed. He claimed that the two agreed that Rebecca could move to Virginia with their daughter and would receive spousal maintenance, but that Destry would keep the naval pension as his separate property. He contended that the failure to list the pension on the dissolution decree was essentially an omission by scrivener's error. Destry also contended that the decree's property division was skewed heavily in Rebecca's favor and was intended to compensate her for the award of the pension to him. Destry testified that, although the decree valued the couple's Oklahoma property at $20,000, the couple knew it was worthless at the time of the dissolution and assigned it to him simply to ease its sale.

---

[2] The parties raise no issues of federal law concerning the naval pension.

4

The second issue arose from a dispute over the meaning of the trial court's suspension of Destry's support obligations during the pendency of his petition to modify the parenting plan and motion to adjust the child support order. Destry asked the trial court to order Rebecca to pay child support while the couple's daughter lived solely with him between July 2012 and July 2013. Rebecca contended that their daughter resided with Destry because of his contempt for the parenting plan and that he should not receive back child support, since the trial court had suspended support obligations pending its resolution of Destry's petition to modify the parenting plan.

The final issue arose out of Destry's objection to the GAL's charged fees. The order appointing the GAL had authorized up to $2,200 without further approval, requiring Destry to pay this amount as a retainer, with the provision that he could later ask the court to apportion the GAL fees equally between him and Rebecca. The GAL ultimately billed $6,300 dollars for performing 63 hours of work. Destry objected and asked the court to cap the GAL's fees at the $2,200 limit in the original order, but the court rejected that motion before trial. Destry then asked the court to order Rebecca to pay the balance of the fees incurred by the GAL.

The trial court resolved all three issues by written opinion filed January 10, 2014 and later issued findings of fact and conclusions of law, along with several orders on March 18, 2014. It resolved Rebecca's claim concerning Destry's naval pension by determining that the failure to check the box in the decree of dissolution awarding any of the pension to Rebecca constituted a decision to award the pension to Destry. The trial court found that Rebecca had failed to provide a sufficient evidentiary basis to modify the decree's award of the pension to Destry and denied her request to award her a community property interest in the naval pension.

The trial court resolved the parties' back child support claims based on three considerations: (1) where the couple's daughter lived during a given period, (2) the November 2012 order on adequate cause to modify the original order of support, and (3) the July 2013 final parenting plan. Because their daughter lived with Destry between July 2012 and November 2012, when the trial court entered the order on adequate cause, it ordered Rebecca to pay back child support to Destry for that period. The trial court interpreted the order on adequate cause as suspending both parents' child support obligations pending the entry of a new parenting plan. Consequently, the trial court ordered neither Rebecca nor Destry to pay back child support between the entry of the order on adequate cause in late November 2012 and the entry of the final parenting plan in July 2013. The couples' daughter resided with Rebecca in July 2013 when the final parenting plan was entered. Reflecting this, the trial court ordered Destry to pay back child support from mid-July 2013 until entry of the 2014 order on child support.

The court resolved Destry's claims concerning the GAL's fees by requiring the parties to share equally the total fees.

Rebecca appeals the findings of fact and conclusions of law entered after the trial, as well as the order modifying child support. Destry cross appeals the same.

ANALYSIS

I. DESTRY'S NAVAL PENSION

Rebecca claims that the trial court erred by declining to award her half of the community's interest in Destry's naval pension. She contends that the decree of dissolution did not award the pension to either of them and cites cases standing for the proposition that the parties to a dissolved marriage become tenants in common in any property not awarded to either of them in a dissolution decree. Destry claims that the decree specifically did not award Rebecca

any interest in his pension. We hold that the dissolution decree is ambiguous, we resolve that ambiguity in Destry's favor, and we affirm the trial court on this issue.

We review the effect of a dissolution as a question of law. *In re Marriage of Gimlett*, 95 Wn.2d 699, 705, 629 P.2d 450 (1981). We attempt to ascertain the intent of the court entering the judgment by applying the general rules of interpretation we use to ascertain the meaning of statutes or contracts. *Gimlett*, 95 Wn.2d at 704-05. Where a decree incorporates an agreement between the parties, we must ascertain the intent of the parties at the time of the agreement, because that intent is the dissolution court's intent. *In re Marriage of Smith*, 158 Wn. App. 240, 255-56, 241 P.3d 449 (2010). Generally we may only use extrinsic evidence to aid our interpretation of a decree where it has ambiguous language. *Kirk v. Cont'l Life & Accident Co.*, 85 Wn.2d 85, 88, 530 P.2d 643 (1975).

RCW 26.09.080 provides that in dissolution proceedings the trial court "shall . . . make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors." This provision imposes a duty on the trial court to divide all property brought to its attention in dissolution proceedings. *In re Marriage of Shaffer*, 43 Wn.2d 629, 630, 262 P.2d 763 (1953) (interpreting former RCW 26.09.080 (1949)).

Where the trial court fails to award property during dissolution, the right to the property "vest[s] equally in the spouses as tenants in common by operation of law." *In re Marriage of Chase*, 74 Wn.2d 253, 257-58, 444 P.2d 145 (1968), *overruled on other grounds by Aetna Life Ins. Co. v. Wadsworth*, 102 Wn.2d 652, 659, 689 P.2d 46 (1984). Retirement benefits earned during a marriage are community property, and the rule vesting the right to property not awarded

7

in a decree to the former spouses as tenants in common applies to any such benefits. *Chase*, 74 Wn.2d at 258.

The decree of dissolution is ambiguous in its disposition of Destry's naval pension. Rebecca correctly notes that the decree's Schedule A, which purportedly awarded all of the combined separate and community property, did not record that it awarded the naval pension to either of them. Instead, the decree specifically awarded each party "the property set forth in Schedule A," also referred to as the appendix, which did not include the naval pension. CP at 42-43. But the decree also failed to check the box awarding part of the pension to Rebecca. The decree thus leaves the status of the pension unclear: the trial court's refusal to award it to Rebecca could mean that it awarded the pension to Destry or it could simply mean that it did not award the pension at all. The trial court effectively resolved the ambiguity by interpreting the decree as awarding Destry the pension.

Because the decree of dissolution arose from an agreement between Destry and Rebecca, we look to their intent to resolve the ambiguity in the award of the naval pension. Extrinsic evidence shows that Destry and Rebecca intended to award the pension to Destry.

First, Destry testified that the parties intended to split their assets by awarding him the pension account and Rebecca spousal maintenance so that she could purchase a car. The decree records this intent with respect to maintenance: it required Destry to make the maintenance payments to the noteholder of the loan for Rebecca's car or make maintenance payments directly to Rebecca if she purchased a replacement car.

Second, Destry testified that the division of assets was unjust and inequitable if he did not receive the pension. Destry testified that the parties agreed to award him the couple's property in Oklahoma, knowing that it was essentially worthless, because they had already agreed to sell the

8

property in a transaction that netted them no money, but relieved them of the obligation to make further payments on the property.

Rebecca's only testimony in opposition to Destry's was that she "expected" to receive some of the retirement. VRP (Dec. 23, 2013) at 36. The trial court correctly reasoned, however, that her testimony does not nullify Destry's testimony about the events leading up to the adoption of the dissolution decree: Rebecca could have "expected" pension payments until the close of their negotiations, at which time she gave up any claim to the pension.

Because the extrinsic evidence supports the trial court's interpretation of the decree as awarding the pension to Destry, we affirm its denial of Rebecca's request that it award the pension to her and Destry as tenants in common.

## II. CHILD SUPPORT

Rebecca appeals the trial court's order requiring her to pay Destry back child support for the period between July and November 2012, claiming that it impermissibly awarded child support retroactively. Destry cross appeals (1) the trial court's order declining to award him child support for the period between December 2012 and July 2013 and (2) the trial court's order requiring him to pay back child support from July 2013 to February 2014. We review the trial court's decisions in these matters for an abuse of discretion, and we hold under that standard that the trial court based the retroactive award of child support to Destry before the filing of his motion to adjust on untenable reasons, meaning it abused its discretion. *In re Marriage of McCausland*, 159 Wn.2d 607, 615-16, 152 P.3d 1013 (2007); *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997). We hold also that Destry waived the claims raised in his cross appeal.

A.    Rebecca's Claim on Appeal

RCW 26.09.170 provides that "[e]xcept as otherwise provided in RCW 26.09.070(7),[3] the provisions of any decree respecting maintenance or support may be modified: (a) Only as to installments accruing subsequent to the petition for modification or motion for adjustment." Courts have interpreted RCW 26.09.170 as generally requiring that modifications to child support occur only prospectively, because retrospective modification upsets vested judgments. *In re Marriage of Shoemaker*, 128 Wn.2d 116, 121, 904 P.2d 1150 (1995). Consequently, the trial court may generally only require back child support as far back in time as the filing of the petition to modify the order of child support. *Chase*, 74 Wn.2d at 259.

Washington's courts have, however, crafted equitable exceptions to RCW 26.09.170's rule that modification to a child support order is only prospective. Generally these equitable exceptions are defenses that allow a parent to offset child support prospectively with payments already made for the child's upkeep. *Shoemaker*, 128 Wn.2d at 122-23 (collecting cases). In rare cases a court may equitably create a support obligation retroactively, but the trial court's ability to do so is severely restricted. *Shoemaker*, 128 Wn.2d at 123. The trial court may only retroactively impose a support obligation where the dissolution decree is silent on child support. *Shoemaker*, 128 Wn.2d at 123.

The decree dissolving Destry and Rebecca's marriage was not silent on child support. It incorporated the order on child support entered contemporaneously with the decree of dissolution. That order provided for child support by both parents and required Destry to make the transfer payments. The trial court therefore could not impose a support obligation on Rebecca for any period of time before Destry's September 2012 petition to modify the parenting

---

[3] Subsection (7) governs separation contracts and thus does not apply to this appeal.

plan and his motion to adjust the order of child support.[4] To the extent that the trial court did so, it erred.

B.     Destry's Claims on Cross Appeal

We decline to address Destry's allegations of error in his cross appeal with regard to his and Rebecca's support obligations. Destry's brief provides no citation to the record or authority in support of his cross appeal. Consequently, his brief fails to meet the requirements of RAP 10.3(a)(6), and Destry has waived his claims of error. *In re Parentage of S.E.C.*, 154 Wn. App. 111, 116, 225 P.3d 327 (2010).

## III. GAL FEES

Finally, Destry cross appeals the trial court's order that he and Rebecca equally share the GAL fees. He contends that the trial court deprived him of property without due process when it allowed the GAL to bill for an amount greater than that allowed by the order appointing the GAL. We do not reach this issue, because Destry has failed to provide a record adequate to review the issue.

We review the trial court's order to pay GAL fees for an abuse of discretion. *See In re Marriage of Bobbitt*, 135 Wn. App. 8, 31, 144 P.3d 306 (2006). To review an exercise of the trial court's discretion, we must know "the basis for the decision." *Stuart v. Consol. Foods Corp.*, 6 Wn. App. 841, 846, 496 P.2d 527 (1972). The parties contested, and the trial court decided, the amount that the GAL could bill in a hearing for which no record was given to this

---

[4] Although she does not specifically make the argument, Rebecca repeatedly references the dates of the petition to modify the order on child support and her acceptance of service of the petition, apparently to contend that the trial court could not order back support before she accepted service. Case law is clear that the trial court may modify an order of child support from the date of the petition. *Chase*, 74 Wn.2d at 259.

court. We therefore decline to reach the merits of Destry's claim, because "[a]n insufficient record on appeal precludes review of the alleged errors." *Bulzomi v. Dep't of Labor & Indus.*, 72 Wn. App. 522, 525, 864 P.2d 996 (1994).

## CONCLUSION

We affirm the trial court's decree of dissolution declining to award Rebecca any interest in Destry's naval pension and its order requiring Destry to pay half of the GAL's fees. We reverse the trial court's order to the extent it directs Rebecca to pay back child support before the filing of Destry's September 20, 2012 petition and motion. We decline to address Destry's claims on cross appeal, given his failure to adequately brief them and provide the record needed for review. This matter is remanded to the trial court for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

JOHANSON, C.J.

SUTTON, J.