# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>JONATHAN ARRAS,<br><br>        Respondent,<br><br>and<br><br>LAURA ARRAS (f.k.a. MCCABE),<br><br>        Appellant. | No. 78615-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: July 15, 2019 |

MANN, A.C.J. — Based on a finding of disability by the Social Security Administration, the trial court granted Laura McCabe's motion to modify her child support obligation prospectively, but denied her request to extinguish child support owed under prior child support orders. Because the superior court did not err in declining to retroactively modify prior orders, we affirm.

I.

Jonathan Arras and Laura McCabe dissolved their marriage in 2010. The parenting plan provided for the parties' two children to reside primarily with Arras. The parties agreed to a downward deviation of the amount of support owed by

McCabe because of the amount of time the children resided with her. The court ordered McCabe to pay child support of $84.30 per month to Arras.

In October 2013, the court modified the parenting plan and reduced McCabe's residential time with the children to four nights per month.[1] At the same time, the court declined to impose RCW 26.09.191 restrictions on McCabe, finding that McCabe's mental health issues were "adequately treated and managed."

Arras then sought to modify the child support order, primarily to eliminate the downward deviation of McCabe's child support obligation. McCabe opposed modification and claimed she had been unable to work since January 2013 due to "severe and debilitating" depression "combined with a lack of employment opportunities." In January 2014, the trial court rejected McCabe's claim of disability and imputed income of $2,693 to her, finding that McCabe's income was "unknown" and she appeared to be "voluntarily under employed." The court ordered McCabe to pay monthly child support of $579.74. The court also imposed sanctions of $1,000 against McCabe for the "failure to comply with court rules" and forcing Arras to respond to improperly filed materials. McCabe did not appeal the order or pay the sanctions.

In October 2016, a superior court commissioner denied McCabe's petition to modify the 2014 child support order. The court concluded there was no "substantial change in circumstances since the 2014 child support order was

---

[1] This court affirmed the trial court's decision to modify the parenting plan. See In re Marriage of Arras, noted at 183 Wn. App. 1009 (2014).

2

entered."[2] The court also rejected McCabe's request to order Arras to pay support to her, to eliminate imputed income, and to strike her back child support debt. The court ordered McCabe to pay $3,000 of Arras's attorney fees and costs as a sanction:

> Because she attempted to re-litigate a 4 year old claim of disability that has already been rejected twice before by the Court, she claimed a disability that was contradicted by her prior statements under oath, and she failed to comply with the financial disclosure rules. The proceedings appear to have been motivated by Respondent's efforts to get out from under [the Division of Child Support's] collection efforts.

Again, McCabe did not appeal the order or pay the sanction.

In March 2017, The Social Security Administration, which had previously rejected McCabe's claim for disability benefits "several" times, determined that McCabe had a qualifying disability, major depressive disorder, and was entitled to benefits as of February 2013.[3] In May 2017, the agency began to pay monthly benefits of $1,044 to McCabe. The agency further determined that it owed McCabe more than $50,000 in back disability benefits. Because McCabe's treatment providers expected her mental health condition to improve with treatment, the agency scheduled a review of the disability determination in September 2018.

Based on this decision, on May 31, 2017, McCabe filed another petition to modify child support. McCabe informed the court that she had earned no income

---

[2] Nevertheless, since two years had lapsed since the prior child support order and the children's age brackets had changed, the court reduced McCabe's obligation slightly from $579.74 to $573.80.

[3] The agency found that McCabe became disabled under its rules in August 2012, but did not become eligible for benefits until February 2013, twelve months before she filed a claim for benefits.

for four and a half years and had survived since 2012 on loans from family and "donations for items from charitable organizations." McCabe asked the court to find her unable to contribute financial support to the children. McCabe also requested that the court order Arras to pay support to her and to vacate her past-due child support obligation and prior sanctions.

Arras objected. He disputed McCabe's claim that she had been disabled and unable to work since 2012. He pointed to McCabe's prior statements in the proceedings involving modification of the parenting plan and other evidence that she was functioning and, to some degree, working after 2012.

In October 2017, the Social Security Administration transferred $17,622.86, a portion of McCabe's disability back benefits, to the Division of Child Support (DCS) to satisfy McCabe's back child support obligation. McCabe resisted release of the funds to Arras and the DCS granted her request to temporarily suspend the release until the resolution of her modification petition. However, in December 2017, after the modification action was continued for a second time, the DCS Conference Board issued a decision stating that it would release the funds unless she procured a court order staying disbursement.[4] On January 8, 2018, the superior court granted a temporary stay until the resolution of McCabe's claim for relief from back child support.

On February 16, 2018, a superior court commissioner held a hearing on McCabe's motion to modify. The commissioner granted the motion, finding that

_____

[4] A conference board is an "informal review of case actions and of the circumstances of the parties and children related to a child support case." WAC 388-14A-6400(1). A conference board is "not a formal hearing under the Administrative Procedure Act, chapter 34.05 RCW," and "does not replace any formal hearing right created by chapters 388-14A WAC, or by chapters 26.23, 74.20 or 74.20A RCW." WAC 388-14A-6400(4), (5).

4

the Social Security Administration's finding of disability was a substantial change in circumstances. The commissioner also found that McCabe had been "unable to work since August 2012" and that she was not voluntarily unemployed. The commissioner recalculated McCabe's support obligation based on her monthly disability benefit amount and reduced her monthly child support payment to $110.31, effective January 1, 2018.[5] However, the commissioner denied McCabe's request for equitable relief, declining to retroactively modify prior orders to relieve her of the accrued child support obligation and sanctions and refused to order Arras to pay child support to McCabe. The commissioner lifted the temporary stay, allowing the DCS to release funds to Arras to satisfy McCabe's support obligation and declined to award attorney fees to either party.

McCabe moved to revise the commissioner's order. The superior court agreed with the commissioner's decision to modify the existing child support order based on the 2017 finding of disability. The court disagreed, however, with the commissioner's finding that McCabe had been unable to work since August 2012. The court found that, while McCabe clearly had a history of depression, "there is also a great deal of documentation in the file that she has been able to work at least part time. It is inconsistent with somebody who says now that she can't or said over time she could barely get out of bed in the morning that she's advertising artwork online, serving on arts boards, which takes time."

The court determined there was no basis for equitable relief from either prior support orders or sanctions. Specifically, the court determined there were

---

[5] The court declined to modify the obligation retroactively to May 2017, the date McCabe filed her petition to modify support.

no "traditional grounds for equitable relief here," and that it had "no authority" to vacate the previously awarded sanctions. The court also found that McCabe "had not provided all of her financial documentation," and her claim that she had no bank account between 2012 and 2017 was not credible. The court found it "astonishing" that McCabe asked the court below to make her the obligee and affirmed the commissioner's ruling denying that request.

II.

When a party moves for revision of a commissioner's ruling, the superior court reviews the decision de novo, based on the evidence and issues presented to the commissioner. See RCW 26.12.215; RCW 2.24.050; In re Marriage of Moody, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999). On appeal from a superior court order denying revision, we review the superior court's decision, not the commissioner's decision. State v. Ramer, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). Our task on review is to determine whether the findings are supported by substantial evidence and whether the trial court has made an error of law. In re Marriage of Capetillo, 85 Wn. App. 311, 316, 932 P.2d 691 (1997); In re Marriage of Stern, 68 Wn. App. 922, 929, 846 P.2d 1387 (1993).

It is undisputed that following the commissioner's February 2018 ruling, the DCS released over $17,000 in accrued benefits to Arras on McCabe's behalf.[6] RCW 26.18.190 addresses the effect of benefits paid by the Social Security Administration in these circumstances. When a parent becomes eligible for social security due to a disability, RCW 26.18.190(2) mandates that the court

---

[6] On this basis, in August 2018, a commissioner of this court denied as moot McCabe's motion to stay the enforcement of the superior court commissioner's ruling allowing disbursement of funds held by the DCS.

No. 78615-6-I/7

offset any disability payments on a parent's behalf against the child support obligation of that parent. RCW 26.18.190(2) states:

> When the social security administration pays social security disability dependency benefits, retirement benefits, or survivors insurance benefits on behalf of or on account of the child or children of a person with disabilities, a retired person, or a deceased person, the amount of benefits paid for the child or children shall be treated for all purposes as if the person with disabilities, the retired person, or the deceased person paid the benefits toward the satisfaction of that person's child support obligation for that period for which benefits are paid.

See In re Parentage of Fairbanks, 142 Wn. App. 950, 956, 176 P.3d 611 (2008); In re Marriage of Hughes, 69 Wn. App. 778, 782, 850 P.2d 555 (1993).

The statute also expressly provides that, when the Social Security Administration has paid benefits to satisfy a child support obligation, the obligor parent has no right to be reimbursed for those amounts:

> Under no circumstances shall the person who has the obligation to make the transfer payment have a right to reimbursement of any compensation paid under subsection (1), (2), or (3) of this section.

RCW 26.18.190(4). Accordingly, the statute prohibits the "restitution" requested by McCabe in this case.

Disregarding these provisions, McCabe argues that the court erred in denying her motion for revision because equitable principles justified retroactively modifying her accrued child support obligation.[7]

"Child support payments become vested judgments as installments become due." Capetillo, 85 Wn. App. at 316; Hartman v. Smith, 100 Wn.2d 766, 768, 674 P.2d 176 (1984); Schafer v. Schafer, 95 Wn.2d 78, 80, 621 P.2d 721

[7] McCabe does not address RCW 26.18.190(4), but appears to concede in her reply brief that the DCS may place a lien on disability benefits to satisfy a child support obligation unless that obligation is retroactively modified or extinguished.

7

(1980). RCW 26.09.170(1) prohibits retroactive modification of accumulated child support payments. In re Marriage of Shoemaker, 128 Wn.2d 116, 121, 904 P.2d 1150 (1995). RCW 26.09.170(1)(a) provides, in relevant part:

> the provisions of any decree respecting maintenance or support may be modified . . . [o]nly as to installments accruing subsequent to the petition for modification or motion for adjustment.

Thus, an order modifying a child support obligation applies only to installments accruing subsequent to the petition for modification. RCW 26.09.170(1); Chase v. Chase, 74 Wn.2d 253, 259, 444 P.2d 145 (1968), overruled on other grounds by Aetna Life Ins. Co. v. Wadsworth, 102 Wn.2d 652, 659, 689 P.2d 46 (1984). Retrospective modification upsets vested judgments and "opens the door to uncertainties, costs and hardship." In re Marriage of Schumacher, 100 Wn. App. 208, 212, 997 P.2d 399 (2000); Shoemaker, 128 Wn.2d at 121.

In rare circumstances, however, Washington courts have allowed traditional equitable principles "to mitigate the harshness of particular claims for retrospective support if it will not work an injustice to the custodian or the child." Capetillo, 85 Wn. App. at 316-17; Shoemaker, 128 Wn.2d at 122-23; In re Marriage of Hunter, 52 Wn. App. 265, 270, 758 P.2d 1019 (1988). In order to exercise its limited discretion to relieve an obligor from past due support, the court must identify an equitable principle that justifies departure from the general rule that support obligations cannot be modified retrospectively. Hunter, 52 Wn. App. at 269. Our courts have upheld retroactive modifications of child support where the equitable principle is premised on a traditional equitable defense, such

as equitable estoppel or laches. Shoemaker, 128 Wn.2d at 123 (no equitable principle justified retroactive modification of support obligations).

Money paid to the obligee parent for past-due support reimburses that parent for funds actually expended. Capetillo, 85 Wn. App. at 316; Hartman v. Smith, 100 Wn.2d 766, 768, 674 P.2d 176 (1984). Thus, one of the rationales for allowing equitable modification of back child support payments is that the child, the beneficiary of the support order, has already been supported by the obligee parent and that parent can, by words or actions, forfeit the right of reimbursement. For example, in Hartman, after the parties' dissolution, the court awarded custody of the child to the mother and ordered the father to pay child support. Hartman, 100 Wn.2d at 766-67. Later, the father gave his consent to allow the mother's new spouse to adopt the child. Hartman, 100 Wn.2d at 767. Both parties understood that the adoption would relieve the father of his obligation to pay child support. Hartman, 100 Wn.2d at 767. A court later vacated the adoption. Hartman, 100 Wn.2d at 767. The mother then sought to recover support that would have accrued during the 7-year period when the parties assumed that the adoption was valid. Hartman, 100 Wn.2d at 767-68. Our supreme court ruled that equitable estoppel barred the mother's claim. Hartman, 100 Wn.2d at 769-70. The court reasoned that throughout the presumptive adoption period, the mother represented to the father that he no longer had to provide support and the father relied on her representations and on the terms of the adoption decree. Hartman, 100 Wn.2d at 769; see also Schafer, 95 Wn.2d 78, 81-82 (applying equitable credits against accrued support);

Marriage of Watkins, 42 Wn. App. 371, 374-75, 711 P.2d 1076 (1985) (applying laches).

In this case, McCabe does not claim that Arras relinquished the right to reimbursement. Instead, she argues that using a portion of her benefits to satisfy her child support obligation creates a financial hardship. With respect to this argument, this court's decision in Hunter is instructive. In that case, during a period of over six years when the father was largely unemployed, he failed to pay child support. Hunter, 52 Wn. App. at 266-67. The parents discussed child support numerous times, but the mother took no legal action to enforce the father's obligation. Hunter, 52 Wn. App. at 267. Eventually, after the father began earning reliable income, the mother initiated proceedings to collect unpaid child support. Hunter, 52 Wn. App. at 267. The father argued that the mother recognized his need to recover from alcoholism and financially reestablish himself and relinquished her right to collect support. Hunter, 52 Wn. App. at 267. A trial court commissioner entered judgment against the father for approximately $30,000 in unpaid child support and interest. The superior court granted a motion to revise because the judgment was "'unduly burdensome'" and reduced the amount to $10,000. Hunter, 52 Wn. App. at 267.

This court reversed, concluding that the trial court could not retroactively modify the father's support obligation based on its assessment that the obligation was onerous and it was unlikely the father would ever have sufficient resources to pay it. Hunter, 52 Wn. App. at 269. The court observed that while traditional equitable defenses of laches and equitable estoppel can apply in the context of

child support, the facts did not support either defense. Hunter, 52 Wn. App. at 273. The court discerned "no other equitable principles which would operate to retroactively modify" the father's support obligation. Hunter, 52 Wn. App. at 273.

Likewise here, McCabe requested retroactive relief on the basis of "severe economic hardship." And while she does not dispute that Arras supported the children when she was unable to contribute, she asserts that disbursing a portion of her disability benefits to compensate him results in an unearned "windfall." She also argues that payment of a portion of her back benefits to satisfy her support obligation is not in the children's best interests because they spend some residential time at her home. Here and below, McCabe's position is that she is entitled to retroactive modification of her child support obligation simply because she has a greater financial need than Arras. But as the decision in Hunter illustrates, this rationale does not fall within the "framework of established 'equitable principles'" that warrants retroactively modifying a court order. See Hunter, 52 Wn. App. at 269 (quoting Hartman, 100 Wn. App. at 769). Even in light of the trial court's express finding that the father in Hunter would likely never have sufficient income to pay the accrued support obligation, we held that the court's "stated reasons [did] not justify departure from the general rule." Hunter, 52 Wn. App. at 269. Unlike the case in Hunter, McCabe undisputedly received an asset which allowed her to satisfy the past due support obligation. The court did not err in concluding there were no "traditional grounds for equitable relief" in this case. See Hunter, 52 Wn. App. at 269.

11

McCabe also contends that CR 60 provided a basis for the court to vacate the prior orders of support and orders imposing sanctions. But McCabe did not seek relief under CR 60 below. Because she did not argue that CR 60 applied and the trial court did not consider it, we decline to review McCabe's argument. Shoemaker, 128 Wn.2d at 121 (declining to decide whether child support order could have been vacated under CR 60 where the issue was not raised before the trial court); see also RAP 2.5(a) (appellate court may refuse to review "any claim of error which was not raised in the trial court").

McCabe also raises a number of procedural issues. She contends the superior court exceeded the scope of review under RCW 2.24.050 by considering matters in the court file. RCW 2.24.050 provides that a decision on a motion for revision "shall be upon the records of the case." Therefore, the revision court may not consider additional evidence submitted after the commissioner enters a ruling. See Moody, 137 Wn.2d at 992-93 (affirming superior court's refusal to consider additional evidence that a party attempted to submit with a motion for revision); In re Marriage of Balcom & Fritchle, 101 Wn. App. 56, 59, 1 P.3d 1174 (2000) (reversing superior court's revision because the superior court entertained supplemental evidence submitted in support of motion to revise).

Here, the court reviewed the record that was before the commissioner, no more. Neither party asked the superior court to consider new evidence in conjunction with the motion for revision. Contrary to McCabe's claim, the entire

docket of the dissolution case was before the commissioner. In the words of the statute, the review was of the "records of the case."

McCabe also claims that disbursement of funds by the DCS in accordance with the commissioner's ruling violated her constitutional right to "meaningful review" and interfered with her ability to seek revision of the commissioner's ruling. We disagree. All commissioner rulings are subject to revision by the superior court. RCW 2.24.050; Wash. Const. art. IV, § 23. This right ensures litigants that disputed decisions are made by elected judges. McCabe was fully able to exercise her right to revision under the process set forth in RCW 2.24.050. And while the DCS is generally required to disburse funds within eight days of receipt, RCW 26.23.035(1)(b), McCabe obtained a temporary order to stay disbursement pending resolution of the motion to modify. The commissioner's ruling on the motion to modify was effective and enforceable unless otherwise provided by a court order. See KCLR 8(B)(iv). McCabe was entitled to move to stay the enforcement of the commissioner's order, but did not seek a stay until July 2018, more than five months after the commissioner issued her ruling after the superior court denied the motion to revise.

McCabe also appears to challenge the order on revision on the ground that both the commissioner and the trial court were required to enter written findings and failed to do so. See RCW 2.24.050 (superior court reviews the "findings of fact and conclusions of law entered by the court commissioner.") But although the commissioner failed to enter findings of fact and conclusions of law, the trial court entered oral findings and expressly incorporated those findings in

its written order. The record is sufficient to permit appellate review. See Just Dirt, Inc., v. Knight Excavating, Inc., 138 Wn. App. 409, 416, 157 P.3d 431 (2007) (when a trial court fails to enter required findings and conclusions, the court will remand for entry of formal findings and conclusions unless the record is adequate for review).

The only finding McCabe appears to specifically challenge is the superior court's finding that she failed to provide all available financial documents. She claims this finding is unsupported because she had no bank accounts until she began receiving disability benefits. But McCabe cites only to her attorney's argument in support of the motion to revise, not to evidence in the record. And we defer to the superior court's credibility determinations. Mitchell v. Wash. State Inst. of Pub. Policy, 153 Wn. App. 803, 814, 225 P.3d 280 (2009)

McCabe also claims that Arras's counsel's "unprofessional conduct" below warranted sanctions. It does not appear that McCabe requested sanctions. Accordingly, she fails to demonstrate trial court error. In any event, while McCabe draws different inferences from the record, she fails to identify an instance when Arras's counsel misrepresented the evidentiary record.

Finally, both parties request attorney fees on appeal. McCabe, as a pro se litigant and non-practicing attorney, is not entitled to recover fees. See Price v. Price, 174 Wn. App. 894, 905, 301 P.3d 486 (2013); In re Marriage of Brown, 159 Wn. App. 931, 938, 247 P.3d 466 (2011). And while we disagree with McCabe's arguments, her appeal is not so devoid of merit as to be frivolous. We decline Arras's request for attorney fees under RAP 18.9.

_Mann, ACJ_

WE CONCUR:

_Andrus, J._                    _Leach, J._